UNITED STATES ex rel. RIZZIO v. KENNEY, Immigration Inspector, et al.

No. 3364.

District Court, D. Connecticut.

May 9, 1931.

Spellacy, Ryan & Yeomans, of Hartford, Conn., for petitioner.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for respondents.

THOMAS, District Judge.

The facts are stipulated and the pertinent parts of the stipulation follow:

The relator was born in Italy on September 15, 1906, and came to this country with his mother when he was 4 years old. He is unmarried, and lives with his parents in Hartford. Neither he nor his parents have any relatives in Italy. On June 8, 1924, he was arrested for the theft of a pocketbook of the value of $1 and $1 in money, and of a hand flashlight of the value of $2. He pleaded guilty, and on September 2, 1924, was thereupon committed to the Connecticut Reformatory at Cheshire. He was paroled at the end of eleven months, and returned to the reformatory charged with violating his parole, and after another eleven months' confinement he was again paroled.

In December, 1926, on information of the state's attorney, he was presented before the superior court charged with assault with intent to rob, and on a plea of guilty, he was sentenced to the Connecticut State Prison for not less than one year nor more than three years.

After serving his sentence he was apprehended by an inspector from the Immigration Service upon a warrant of deportation signed by the Secretary of Labor. The predicate for the deportation was based on the allegation that since his entry into the United States he had been sentenced to imprisonment more than once for a term of one year or more for the commission of a crime involving moral turpitude.

The language of the pertinent act of Congress has been the subject of frequent judicial construction and yet the specific point raised by this record seems never to have been determined. An alien is subject to deporation "who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude. * * *" 8 USCA § 155.

There can be no question but that, except in unusual circumstances, theft is a crime involving moral turpitude and that assault with intent to rob is also a crime involving moral turpitude. Nor can there be any question, at this date, that an indeterminate sentence to imprisonment is to be regarded, for the purposes of the Immigration Act, as a sentence to a possible maximum term of that imprisonment. See United States ex rel. Paladino v. Commissioner of Immigration (C. C. A.) 43 F.(2d) 821; United States ex rel. Morlacci v. Smith (D. C.) 8 F.(2d) 663; United States ex rel. Kiobge v. Day (D. C.) 42 F.(2d) 716; United States ex rel. Sirtie v. Commissioner of Immigration (D. C.) 6 F.(2d) 233; United States ex rel. Parenti v. Immigration Inspector et al., 50 F.(2d) 902, decided by this court May 5, 1930. In none of the above-cifed cases, however, was the question raised as to what constitutes "imprisonment" within the meaning of the statute providing for deportation.

That question emerges sharply from this record. The relator was not quite 18 years old when he was arrested upon the charge of stealing property of the value of $4. Had he been 26 years old, he could not have been sentenced to the reformatory, and the maximum prison punishment that could have been inflicted upon him would have been thirty days in jail in accordance with the penalty provided by section 6255 of the General Statutes of Connecticut, Revision 1918. A male person between the ages of 16 and 25 years may, however, in the discretion of the trial court, when convicted of an offense the maximum punishment of which is less than one year in jail, be committed to the reformatory upon an indeterminate sentence, but for not more than two years. It is to be noted that under the provisions of section 1838 of the General Statutes of Connecticut, Revision 1918, inmates of the Connecticut School for Boys between the ages of 16 and 21 whom the trustees of said institution desire to have transferred to the reformatory could likewise be sent there. Practically the same provisions will be found in chapter 262 of the Public Acts of 1919.

If sentence to a reformatory is a sentence to "imprisonment," then the somewhat anomalous situation results, that an offender of mature age, found guilty of the theft of $4, may be sentenced to imprisonment for only thirty days but that a boy of 14, found guilty of the same offense, may be sentenced to imprisonment for 2 years. It can hardly be assumed that such was the legislative intent and that such a sentence to a reformatory was intended to be a sentence to imprisonment within the ordinary significance of that term.

I am not now concerned with the question of the actuality of the beneficence which substitutes detention in a reformatory for imprisonment in jail. But it occurs to me that the rationale of the reformatory idea is its assumed ameliorative and correctional influence. How far this materializes in practice is, for the purposes of our discussion, irrelevant. But it is obvious enough that the state of Connecticut does not regard a reformatory as a prison; that is, as a place for the punitive detention of convicted criminals.

I think that it may be fairly said that, when Congress legislated the criteria by which an alien might be determined to be undesirable, it had in mind the usual concomitant of the existence of such criteria. A sentence for a year generally implies, in these United States, the commission of a crime of substantial gravity, provided, of course, that the sentence is to imprisonment. A sentence of two years to a reformatory for the theft of a postage stamp, which is quite possible under the laws of Connecticut, is hardly the criterion contemplated by the federal statute. And it is to be noted that the word "imprisonment" is not used in the Connecticut statutes regulating commitments to a reformatory. Offenders are sentenced, not to imprisonment in a reformatory but are committed to the reformatory. In the case of persons who have committed serious offenses, the trial court may commit them to a reformatory, "if they deem them amenable to reformatory methods." When they have been committed to the reformatory, they are not to remain "imprisoned" there, but they may be "detained" there, etc. And, if a reformatory be, indeed, a prison, as such term is understood in the penal law of Connecticut, then it is quite remarkable that inmates of the Connecticut School for Boys, who have not been convicted of any crime may nevertheless, upon motion of the trustees of that institution, be sent to this prison.

The question presented in the case at bar is by no means free from difficulty. Practically no light is thrown upon it by the language of any previous decision which I have been able to find. It is true, that in several cases, warrants of deportation have been sustained where a sentence to a reformatory has been relied upon. In this jurisdiction this court sustained such a warrant.

United States ex rel. Parenti v. Immigration Inspector et al., 50 F.(2d) 902, decided May 5, 1930. But in none of those cases was this exact question raised. All of those cases, as well as the Parenti Case, turned upon the question as to whether an indeterminate sentence is, from the standpoint of the Immigration Act, a sentence for the possible maximum of the term, and there it was held that the possible maximum governs.

A passing reference in the Paladino Case, decided by the Circuit Court of Appeals for the Second Circuit, 43 F.(2d) 821, 823, is the only language I have been able to find which in any wise touches upon this problem. In that case the relator had been convicted of grand larceny and had served fourteen months in the Elmira Reformatory. He was later convicted of robbery in the first degree and sentenced to the petitentiary for an indeterminate term. It so happened in that case that the petitioner did not contest the adequacy of the reformatory sentence as a predicate for deportation proceedings. Both sides concentrated upon the question as to whether the indeterminate sentence to the penitentiary was a sentence for the possible maximum. Peculiarly enough, the petitioner did submit the suggestion that the indeterminate sentence to the penitentiary, under the New York Parole Commission Law (Laws N. Y. 1915, c. 579 as amended by Laws N. Y. 1916, c. 287), involved a reformatory idea and, consequently, was not to be regarded as a sentence to "imprisonment" within the meaning of the congressional act. Judge Hand, in discussing the question had occasion to say: "While it cannot be doubted that the reformation of persons who had not become hardened criminals was a prime reason for the enactment of the Parole Commission Law, yet sentences in the indeterminate form there provided are punitive as well as reformatory."

After careful consideration of the question here presented, I am of the opinion that the sentence of a juvenile to a reformatory is not a sentence to "imprisonment" within the intendment of the Immigration Act, and, so holding, I find that there is no adequate basis for the warrant of deportation issued herein. It follows, therefore, that the writ of habeas corpus is sustained. Submit order accordingly.