**UNITED STATES ex rel. CERAMI v. UHL,**
District Director of Immigration.
No. 393.

Circuit Court of Appeals, Second Circuit.
July 8, 1935.

Joseph P. Doyle, of Rochester, N. Y. (Hugh J. O'Brien, of Rochester, N. Y., of counsel), for appellant.

Martin Conboy, U. S. Atty., of New York City (Malcolm A. Crusius, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The relator is a subject of the Kingdom of Italy who entered this country lawfully at the Port of New York ex steamship Santa Anna on June 10, 1913. He was then about three months old and has since resided continuously in the United States.

On May 27, 1930, having pleaded guilty in the City Court of Rochester, N. Y., to a charge of unlawful entry with intent to commit larceny, he was by that court committed to the care and custody of the managers of the Society for the Reformation of Juvenile Delinquents in the City of New York and delivered to the Superintendent of the New York House of Refuge on Randalls Island, New York City, to be dealt with according to law. As he was then seventeen years old and by the provisions of section 204 of the State Charities Law N. Y. (Laws 1909, c. 57 [Consol. Laws N. Y. c. 55], as amended by Laws 1909, c. 340; Laws 1910, c. 449, § 14; Laws 1911, c. 486, renumbered § 196 by Laws 1928, c. 859, § 16) became a ward of the institution during his minority, whether or not discharged or paroled therefrom, the term of his commitment though indefinite was

for more than one year. Compare United States ex rel. Paladino v. Commissioner of Immigration, 43 F.(2d) 821 (C. C. A. 2).

He was paroled from the House of Refuge, and on May 17, 1933, having pleaded guilty to the charge of robbery in the second degree in the County Court for the County of Monroe, N. Y., was sentenced by that court to imprisonment at hard labor in the State Prison at Auburn, N. Y., for the term of not less than one year nor more than three years.

Both of these offenses involving moral turpitude, a warrant for the deportation of this alien to Italy was issued by the Department of Labor on the ground that the relator had within the meaning of 8 USCA § 155 been sentenced more than once to imprisonment for a term of one year or more because of the conviction in this country of a crime involving moral turpitude committed at any time after entry. The District Court was of the opinion that the relator was deportable under the provisions of the above statute and accordingly so ordered.

■■■■ The sentence of this alien to the state prison was one such sentence as the statute requires as a condition precedent to deportation, and the result of this appeal depends upon whether the previous commitment, conceding the crime to which the boy pleaded guilty to have been one involving moral turpitude, was another. Section 155 of title 8 USCA does not define the phrase "sentenced to imprisonment." Implicit in it, however, is the idea of punishment. While that may not be said to be exclusive of the corrective or reformatory aspect commonly associated in the minds of many with the prison system in this country, it must be agreed that the penal element in a sentence to imprisonment is paramount. The infliction twice of a penalty at least as severe as a sentence to imprisonment for a year or more following conviction of a crime as indicative of the character of the offender as are those involving moral turpitude is the substantial basis for deportation. When such punishment has not been inflicted, the required statutory consequence of the alien's conduct is lacking for purposes of deportation. While the fact that the continuous residence of the alien in this country since he was three months old would in all likelihood make his deportation the equivalent of exile is of no moment from the purely legal aspect of this appeal, it serves to indicate the importance of the issue presented. Some light is thrown on the matter by the state statute under which he was committed by the City Court of Rochester. That is section 2184 of the Penal Law of New York (Consol. Laws N. Y. c. 40) as amended by Laws 1924, c. 479, § 1, and at the time of the commitment the portion which was applicable read: "Where a male person of the age of sixteen years and under the age of eighteen years has been convicted of juvenile delinquency or a crime not punishable by death or life imprisonment, the trial court may, instead of sentencing him to imprisonment in a state prison or in a penitentiary, direct him to be confined in a house of refuge established by the managers of the society for the reformation of juvenile delinquents in the city of New York; under the provisions of the statute relating thereto." The caption to section 2184 was "Sentence to house of refuge, state industrial school, and New York State Training School for Girls." Yet the body of the statute in the part above quoted shows that in so far as commitment to the House of Refuge was permissibly designated a "sentence" in the caption, it was nevertheless one directly contrasted in the statute itself with a sentence to imprisonment in a state prison or penitentiary. Instead of a sentence to imprisonment the court might, and in this instance did, commit to confinement in an institution not properly to be considered a place of punishment for crime though not, to be sure, unconnected with the enforcement of the penal law of the state. It has, indeed, been treated as penal in upholding the validity of section 197 of the State Charities Law N. Y. (Consol. Laws N. Y. c. 55), as renumbered and amended by Laws 1928, c. 859, § 16 providing for the transfer of a prisoner from one penal institution to another. See People ex rel. Gorofsky v. Warden (Sup.) 183 N. Y. S. 885; In re Schiavone (Sup.) 183 N. Y. S. 884; People ex rel. Cunningham v. Warden (Sup.) 183 N. Y. S. 882. Yet this but emphasizes the difference between its character and purpose as reformatory and the punishment which transfer from it to a prison or penitentiary entails. It cannot be doubted that the prime object of the maintenance of the House of Refuge and the commitment of persons thereto is reformatory. See People v. Degnen, 54 Barb. (N. Y.) 105. The commitment of this alien to the House of Refuge under the state statute which permitted

that to be done instead of sentencing him to imprisonment was not only the exercise of discretion as to the kind of institution best suited to the needs of the occasion, but a disposition of the charge to which he had pleaded guilty which does not fall verbally within section 155 of title 8 USCA. Sight should not be lost of the fact that Congress has not made the deportation of an alien dependent upon his having twice committed at any time after entry a crime involving moral turpitude. Instead, sentence to imprisonment twice for the requisite time for the commission of crime of that character is the test of the right to deport. In this way the judgment of the sentencing court as to the gravity of the offense, whether or not one calling for a sentence of less than a year, becomes a material element whenever what may properly be called a sentence to imprisonment is imposed. But in such a commitment as this was there is no opportunity for the court to vary the terms: The boy has to be between the ages of sixteen and eighteen years to make the statute applicable. Upon his commitment, as has been pointed out above, he becomes the ward of the institution until his majority. Thus action taken to reform and educate an offender in lieu of a sentence to imprisonment which the sentencing judge might, and often probably would, impose for a term less than a year automatically requires commitment for a term exceeding one year. Were such a commitment held to be a sentence to imprisonment within the meaning of 8 USCA § 155, not only would the contrasting language of the state statute have to be ignored, but as well the contrasting purpose so obviously the basis of giving to the court the power to choose between two materially different courses of action the better to fit the circumstances of offenses and offenders. We cannot believe that Congress intended by the phrase "sentenced to imprisonment" to put the humane attempts of modern society to reform and educate minors in institutions like the House of Refuge in the same category with prison sentences of a year or more as a part of the basis for deportation. In reaching this conclusion we are not unmindful of United States ex rel. Morlacci v. Smith, 8 F. (2d) 663 (D. C. W. D. N. Y.), and United States ex rel. Sirtie v. Commissioner of Immigration, 6 F.(2d) 233 (D. C. E. D. N. Y.). Neither of those cases involved a commitment to the House of Refuge on Randalls Island, and we do not need now to express any opinion as to whether or not they were correctly decided. See, however, United States ex rel. Rizzio v. Kenney, 50 F.(2d) 418 (D. C. Conn.).

Order reversed, and relator discharged.