**UNITED STATES ex rel. POPOFF v. REIMER, Commissioner of Immigration and Naturalization.**

**No. 65.**

Circuit Court of Appeals, Second Circuit.

Oct. 21, 1935.

Irving Schwab and Maurice B. Gladstone, both of New York City, for appellant.

F. W. H. Adams and Martin Conboy, U. S. Attys., both of New York City (Malcolm A. Crusius and David W. Wainhouse, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The appellant is an alien who is held for deportation under a warrant charging, as the ground for his expulsion, that he has been twice sentenced to a term of imprisonment of a year or more because of conviction of crimes involving moral turpitude committed after his entry into the United States. Immigration Act of 1917, § 19 (8 USCA § 155). He entered in 1915. In 1919, when he was 17 years of age, he pleaded guilty to an indictment charging grand larceny in the second degree (N. Y. Penal Law, § 1297, Laws 1892, c. 662, § 17 [Consol. Laws N. Y. c. 40]), and was sentenced to be "imprisoned in the New York State Reformatory at Elmira, to be there confined under the provisions of the law relating to that Reformatory, he being sentenced this 31st of Jan. 1919." In December, 1932, he was convicted in the District Court of the United States for the Northern District of New York of a violation of section 23 of the Immigration Act of June 29, 1906 (8 USCA § 414), and was sentenced to imprisonment in the Northeastern Penitentiary for a term of two years. Contending that these sentences do not support the charge on which he was held for deportation, the alien sued out a writ of habeas corpus, which the District Court dismissed.

It is argued, first, that commitment to the New York state reformatory is not a sentence to imprisonment within the meaning of section 19 of the Immigration Act of 1917 (8 USCA § 155). Reliance is placed upon the recent decision of this court in United States ex rel. Cerami v. Uhl, 78 F.(2d) 698. There it was held that an alien 17 years of age, who had been committed to the House of Refuge on Randalls Island, New York City, for a term which might continue during his minority, had not received such a sentence of imprisonment as subjected him to deportation, because the prime object of commitment to such institution was reformatory rather than penal, while implicit in the phrase "sentenced to imprisonment," as used in section 19 of the Immigration Act of 1917 (8 USCA § 155), is the idea of punishment. It is urged that the purpose of commitment to the state reformatory is likewise correctional and reformatory rather than punitive, and the same conclusion should follow. It is to be noted that our opinion in the Cerami Case expressly left open for subsequent decision the question now presented as to reformatories.

When the local statutes relating to the respective institutions are examined, important differences become at once apparent. Commitment to the house of refuge is pursuant to section 2184 of the Penal Law (Laws 1909, c. 88 [Consol. Laws N. Y. c. 40]). It relates to boys between the ages of 16 and 18, and provides that, instead of sentencing the offender to imprisonment in a state prison or a penitentiary, the court may direct him to be confined in a house of refuge established by the managers of the society for the reformation of juvenile delinquents in the city of New York. Commitment to a reformatory is governed by section 2185, which in 1919 provided that a male between the ages of 16 and 30, convicted of a felony, might, in the discretion of the trial court, be sentenced to imprisonment in the New York State Reformatory at Elmira. Laws 1888, c. 145, § 8; Laws 1909, c. 88 (Consol. Laws N. Y. c. 40). Thus the statute itself, unlike section 2184, refers to commitment to the reformatory as "imprisonment," relates only to felons, and includes men who may be 30 years of age. Felony was defined as a crime punishable by imprisonment in a state prison (Penal Law, § 2, Laws 1909, c. 88 [Consol. Laws N. Y. c. 40]), and only an offender who was sentenced to one year or more could be sent to the state prison (section 2182, as amended by Laws 1918, c. 269, § 1, and section 2183 [Laws 1909, c. 88, Consol. Laws N. Y. c. 40]). Hence no one could be committed to the reformatory unless he had committed a crime for which he could have been sentenced to a term of imprisonment of one year or more. Moreover, an incorrigible inmate of the house of refuge might be transferred to the reformatory. State Charities Law, § 193 (Laws 1909, c. 57 [Consol. Laws N. Y. c. 55]). From the foregoing references to the statutes it is apparent that imprisonment in a reformatory was awarded to more serious offenders and was regarded as more punitive than confinement in a house of refuge. The duration of imprisonment in the reformatory was uncertain, but the indeterminate duration of a sentence which may exceed one year has already been held no obstacle to deportation under the Immigration Act. United States ex rel. Paladino v. Commissioner, 43 F.(2d) 821 (C. C. A. 2). Reformation of the criminal is one of the objects of legislation permitting an indeterminate sentence. Because commitment to a reformatory aims to reform as well as to punish, we cannot hold that the appellant has not been sentenced to imprisonment, particularly when the very terms of the statute under which he was committed say that he has. In modern times all penal discipline has some element of reformation, and we should have to count out all sentences if that alone were sufficient to create an exception. The most that can be drawn from the Cerami Case, supra, is that, where the "prime object" of confinement is correctional and the punitive element relatively insignificant, there is no "sentence to imprisonment" within the contemplation of the Immigration Act. As has been shown above, the punitive purpose is clearly more substantial in the provisions for confinement in the state reformatory. We deem it sufficiently substantial to require a different conclusion. That commitment to a reformatory was a "sentence to imprisonment" was implicit in the decision of this court in the Paladino Case, supra. It was explicit in the holdings of two District Court cases. United States ex rel. Sirtie v. Commissioner, 6 F.(2d) 233 (D. C. N. Y.); United States ex rel. Morlacci v. Smith, 8 F.(2d) 663 (D. C. W. D. N. Y.). Whether United States ex rel. Rizzio v. Kenney, 50 F.(2d) 418 (D. C. Conn.), can be reconciled with them because of differences in the statutes relating to reform-

atories in Connecticut need not be now considered.

The appellant's second contention is that the crime for conviction of which the second sentence was imposed does not involve moral turpitude. The applicable portion of the statute (8 USCA § 414) reads as follows:

"Any person who knowingly aids, advises, or encourages any person not entitled thereto to apply for or to secure naturalization, or to file the preliminary papers declaring an intent to become a citizen of the United States, or who in any naturalization proceeding knowingly procures or gives false testimony as to any material fact, or who knowingly makes an affidavit false as to any material fact required to be proved in such proceeding, shall be fined not more than $5,000, or imprisoned not more than five years, or both."

The judgment of conviction recites that the appellant was tried and convicted of the offense of unlawfully aiding, advising, and encouraging a certain named alien to apply for or to secure naturalization or to file the preliminary papers declaring intent to become a United States citizen, "making false statements regarding said alien's name and entry to the United States," in violation of the statute.

The statute creates two crimes: (1) Knowingly aiding a person not entitled thereto to apply for or secure naturalization or to file preliminary papers; and (2) in such a proceeding knowingly procuring or giving false testimony or a false affidavit. The judgment of conviction shows that the former offense was the one committed, and that the appellant aided the applicant by making false statements regarding the applicant's name and entry. We may not assume that the false statements were made under oath; and without an oath there can be no perjury. Were perjury charged, there could be no doubt that the crime involved moral turpitude. United States ex rel. Karpay v. Uhl, 70 F. (2d) 792 (C. C. A. 2). Although the appellant's crime did not involve perjury, it necessarily involved aiding the applicant to commit a fraud upon the government and giving such aid knowingly. Criminal frauds with respect to property have universally, so far as we are advised, been deemed to involve moral turpitude. United States ex rel. Medich v. Burmaster, 24 F. (2d) 57 (C. C. A. 8); United States ex rel. Millard v. Tuttle, 46 F.(2d) 342 (D. C. La.); Ponzi v. Ward, 7 F. Supp. 736 (D. C. Mass.). That the fraud relates to obtaining rights of citizenship rather than to property does not, we think, make it any the less contrary to community standards of honesty and good morals. In our opinion the inherent nature of the offense of fraudulently aiding an alien not entitled to naturalization to apply for or obtain citizenship involves the moral turpitude requisite for deportation. Compare In re O'Connell, 184 Cal. 584, 194 P. 1010; In re Hofstede, 31 Idaho, 448, 173 P. 1087; In re Peters, 73 Mont. 284, 235 P. 772.

Judgment affirmed.