**UNITED STATES ex rel. McMAHON et al. v. NEELEY.**

No. 10211.

United States Court of Appeals Seventh Circuit.

Feb. 1, 1951.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill. (Benjamin D. Caruso, Asst. U. S. Atty., Chicago, Ill., John McWhorter, Immigra-tion and Naturalization Service, Chicago, Ill., of counsel), for appellant.

No appearance for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

In this appeal Marcus Neeley, Acting District Director of Immigration and Nat-uralization Service, Department of Justice, in the Chicago District, seeks to reverse the final order in a *habeas corpus* proceeding which discharged Patrick Joseph McMahon, an alien, in custody under an order of de-portation. No appearance has been entered herein on behalf of the alien.

It appears that Patrick Joseph McMahon was born in Eire in 1904. He was brought to the United States by his parents, in September 1909. His entry was lawful, and he has since lived in this country continu-ously. He is not, however, a citizen. Until 1935, he had always believed that he had acquired citizenship through the naturaliza-tion of his father. In that year he was in-formed that he was mistaken in his belief and that he was still an alien. He has no relatives or friends in Eire.

The record discloses that on July 3, 1922, at which time he was about 18 years of age, he pleaded guilty in the Criminal Court of Cook County, Chicago, Illinois, case 26279, to the larceny of property of the value of $152. He was sentenced to the Illinois State Reformatory, at Pontiac, Illinois, on July 18, 1922, for an indeterminate term. On this conviction he served about 32 months in said reformatory.

Later on, in September 1927, he again pleaded guilty in the Criminal Court of Cook County, case 44319, to the larceny of property of the value of $200. On Septem-ber 19, 1927, he was sentenced for an in-determinate term at one to ten years in the Illinois State Reformatory, at Pontiac, Illi-nois. On the same day, September 5, 1927, he pleaded guilty in the Criminal Court of Cook County, case 44320, to larceny of property of the value of $83.00 for which he was sentenced on September 19, 1927 for an indeterminate term of one to ten years in the Illinois State Reformatory, at Pon-

tiac, Illinois, to run concurrently with the sentence in case 44319. On the sentences of September 19, 1927, he served four years.

On January 24, 1935, he pleaded guilty and was sentenced to serve two years in the Federal Penitentiary at Leavenworth, Kansas, by the District Court of the United States for the Northern District of Illinois, for violation of Section 317 [revised §§ 1702, 1708], Title 18 U.S.C.A.

The record further discloses that the Immigration and Naturalization Service in 1935 considered the deportation of this alien, but took no affirmative action. For the past fifteen years his record has been good.

On July 18, 1942, he was arrested on a warrant issued by the Service which charged that he was subject to deportation under the Immigration Act of 1917, Title 8, § 155, U.S.C.A., because subsequent to May 1, 1917, he had been sentenced to imprisonment more than once for a term of one year or more for the commission, subsequent to entry, of a crime involving moral turpitude, meaning the offenses hereinbefore set forth. Hearings on this warrant were had, and on November 17, 1942, an order directing McMahon's deportation to Eire was entered. This order was approved by the Board of Immigration Appeals. Various stays were given, but on October 15, 1949, he was arrested for immediate deportation. Thereupon his sister filed the petition for *habeas corpus* here involved.

The Act of February 5, 1917 provides, Title 8, § 155(a), U.S.C.A., that at any time an alien who is hereafter sentenced more than once to imprisonment for a term of one year or more because of conviction in this country of any crime involving moral turpitude, committed at any time after entry shall be taken into custody on warrant of the Attorney General and deported.

Since it is undisputed that McMahon's sentence to Leavenworth Penitentiary for two years was within the Act, the sole question presented by this record is: Were the sentences, pronounced upon Patrick Joseph McMahon in 1922 and in 1927, to the Illinois State Reformatory at Pontiac, Illinois, sentences to imprisonment within the meaning of Title 8, § 155(a), U.S.C.A.?

If they were not sentences to imprisonment within said section of the Act of 1917, the order of the District Court should be affirmed. If they were sentences to imprisonment within the Act, its order must be reversed.

In reaching the conclusion that a sentence to the Illinois State Reformatory, at Pontiac, was not a sentence to imprisonment within Title 8, § 155(a), U.S.C.A., the District Court relied upon two cases which arose in the Second Circuit: United States ex rel. Rizzio v. Kenney, D.C., 50 F.2d 418, and United States ex rel. Cerami v. Uhl, 2 Cir., 78 F.2d 698.

In the Rizzio case, 50 F.2d 418, the United States District Court for the District of Connecticut, held that a sentence to the Connecticut Reformatory at Cheshire was not a sentence to "imprisonment" within the intendment of the Immigration Act, and discharged the relator from custody under a warrant of deportation. The Connecticut Court said, 50 F.2d at page 420. " * * * And it is to be noted that the word 'imprisonment' is not used in the Connecticut statutes regulating commitments to a reformatory. Offenders are sentenced, not to imprisonment in a reformatory but are committed to the reformatory. In the case of persons who have committed serious offenses, the trial court may commit them to a reformatory, 'if they deem them amenable to reformatory methods.' * * * "

In the Cerami case, 78 F.2d 698, the Court of Appeals for the Second Circuit held that a sentence to the New York House of Refuge on Randall's Island, did not fall verbally within Title 8, § 155, U.S.C.A. The court said, 78 F.2d at pages 699–700: " * * * The commitment of this alien to the House of Refuge under the state statute which permitted that to be done instead of sentencing him to imprisonment was not only the exercise of discretion as to the kind of institution best suited to the needs of the occasion, but a disposition of the charge to which he had pleaded

guilty which does not fall verbally within section 155 of title 8 U.S.C.A. Sight should not be lost of the fact that Congress has not made the deportation of an alien dependent upon his having twice committed at any time after entry a crime involving moral turpitude. Instead, sentence to imprisonment twice for the requisite time for the commission of crime of that character is the test of the right to deport."

However, in United States, ex rel. Popoff v. Reimer, 2 Cir., 79 F.2d 513, decided in October 1935, little more than three months after the Cerami case, the same court held that a boy seventeen years of age who had pleaded guilty to the charge of grand larceny in the second degree, and who was sentenced to be "imprisoned" in the New York State Reformatory, was deportable, under Title 8, § 155, U.S.C.A., upon proof that he had thereafter been convicted and sentenced to imprisonment in the Northeastern Penitentiary for a term of two years for a federal offense involving moral turpitude.

Again, and about four years later, the same court had before it the question of whether or not an alien who had been sentenced to an indeterminate term in the New Jersey Reformatory, at Rahway, and who had later been transferred to the New Jersey Reformatory, at Annandale, on a charge of robbery, was sentenced to imprisonment within the meaning of Title 8, § 155, U.S.C.A. In this case, United States, ex rel. Bruno v. Reimer, 2 Cir., 103 F.2d 341, the court said on page 342:

"The position taken by the relator is that, conceding all else in respect to the order of deportation to be lawful, the order is nevertheless invalid because the first sentence he received under which he was confined in the two reformatories named was not a sentence to a penal institution in which confinement amounted to imprisonment within the meaning of 8 U.S.C.A. § 155.

"In United States ex rel. Cerami v. Uhl, 2 Cir., 78 F.2d 698 we decided that commitment to the care and custody of the managers of the Society for the Reformation of Juvenile Delinquents in the City of New York, followed by delivery to the Superintendent of the New York House of Refuge on Randalls Island, though the equivalent of a sentence for a year or more, was not imprisonment within the meaning of 8 U.S. C.A. § 155. The nature of the institution and the purposes for which youths were sent there for the remainder of their minority to be dealt with according to law was held too far removed from the idea of punishment inherent in imprisonment to make such confinement the kind of imprisonment meant in the deportation statute.

"That decision, however, as based wholly on the nature of a commitment to the House of Refuge on Randalls Island and does not control as to commitments upon sentences to institutions not maintained purely for such corrective, as distinguished from punitive, purposes. It was soon followed by United States ex rel. Popoff v. Reimer, 2 Cir., 79 F.2d 513, where the effect of commitment to the New York State Reformatory at Elmira as an imprisonment within the meaning of the deportation statute was in issue and it was held that a sentence to imprisonment in that reformatory was so punitive in purpose as to make confinement therein imprisonment to be treated as such in deportation proceedings.

"In so far as we are able to determine from what is before us on this appeal, the reformatory in New Jersey to which the relator was committed and also that to which he was transferred are both state institutions to which offenders are given punitive sentences for an indeterminate period; and that such offenders are not merely minors who receive corrective and reforming care during their minority. No doubt there is a general purpose to reform underlying the present-day maintenance of all penal institutions but unless the idea of punishment for crime is clearly subordinate the decision in the Popoff case, supra, makes confinement in a state reformatory under sentence to imprisonment after conviction the kind of imprisonment meant in 8 U.S.C.A. § 155. The New Jersey reformatories appear to be in the same general category with the New York State Reformatory at Elmira and so no error in

dismissing the petition for the writ of *habeas corpus* has been shown."

We are of the opinion that the reasoning of the Court of Appeals for the Second Circuit in the Bruno case, 103 F.2d 341, is decisive of the problem presented in this appeal.

Under the law of Illinois, in force when McMahon first pleaded guilty to grand larceny, the punishment was imprisonment in the penitentiary for not less than one nor more than ten years. By the Sentence and Parole Act of 1917, Laws 1917, page 353, S.H.A. ch. 38, § 801 et seq., it was provided in section 3 that except for the crimes enumerated in section 1 (that is to say— except for misprision of treason, murder, rape or kidnapping) every person over ten years of age who should be guilty of a felony or other crime punishable by imprisonment in the penitentiary, or by imprisonment either in the penitentiary, or jail, and as to whom the court shall have assessed the jail sentence, shall in all such cases, except as otherwise provided in clauses one to four inclusive of the section, be sentenced to the penitentiary; and clause 1 provided that every male person between the ages of sixteen and twenty-six years, except in capital cases, may, in the discretion of the court be sentenced to the reformatory instead of to the penitentiary. Smith Hurd's Ill.Ann.Stat. Ch. 38, § 803.

Clause 2 provided that every male person between the ages of twenty-one and twenty-six years of age, who has been previously sentenced to the penitentiary or reformatory, in this or any other state, district or county, may, in the discretion of the court, be sentenced to the penitentiary instead of to the reformatory.

We are of opinion that a person who, after pleading guilty, is sentenced to an institution such as the State Reformatory at Pontiac, Illinois, for a crime involving moral turpitude, and who is there restrained or confined, under the terms of the sentence imposed, for a period of one year or longer, has been imprisoned and suffered imprisonment within Title 8, § 155(a), U.S.C.A.

The order of the District Court is reversed.