MATTER OF M—

In DEPORTATION Proceedings

A-10582561

*Decided by Board June 28, 1962*

Crime involving moral turpitude—Section 835(a), Title 14, Virgin Islands Code.
Conviction for drawing and delivering worthless checks in violation of section 835(a), Title 14, Virgin Islands Code, is conviction of a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Crime within five years—Drawing and delivering worthless checks.

**BEFORE THE BOARD**

DISCUSSION: The special inquiry officer terminated the deportaportation proceeding and certified the case to this Board for final decision.

The respondent is a 32-year-old married male, native of the Canal Zone and British subject, who last entered the United States on November 1, 1957, at which time he was admitted for permanent residence. On December 22, 1961, he was convicted in the District Court of the Virgin Islands on five counts of a criminal information which charged the drawing and delivering of worthless checks and he was sentenced to imprisonment for 2½ years. Six months of the sentence was to be served in jail and the remainder of the sentence was suspended, the respondent being placed on probation during the latter 2 years. The offenses were committed between June 9, and August 12, 1961. The sole issue is whether the crimes involve moral turpitude.

We have carefully considered the entire record. The Virgin Islands Code (Title 14, section 835(a)) provides, in part, as follows: "Whoever makes, draws, utters, or delivers any check, draft or order for the payment of money—(1) to the value of $100 or more upon any bank or other depository knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in, or credit with, such bank or other depository for the payment of such check, draft or order, in full, upon its presenta-

743

tion, shall be fined not more than $1,000 or imprisoned not more than 5 years, or both * * *." The second subdivision of section 835(a) provides for a fine of not more than $200 or imprisonment of not more than one year, or both, where the value of the check was less than $100. Section 835(b) provides that the making of a check, the payment of which is refused by the drawee, shall be *prima facie* evidence of the maker's knowledge of insufficient funds in such bank if the maker has not paid the drawee the amount due together with costs within ten days after receiving notice that such check has not been paid by the drawee.

In *Matter of B—*, 4—297 (1951), we concluded that issuing worthless checks under the statutory provisions of Ohio and Indiana involved moral turpitude. In both of these statutes, however, an essential element was the intent to defraud; whereas, the statutory provision under discussion here does not specifically refer to this as being an element of the crime. For that reason, and due to certain language in another reported case, the special inquiry officer was of the opinion that the Government failed to establish that the crimes involve moral turpitude.

The reported case last mentioned is *Matter of B—*, 3—278 (1948), which was a decision by the Service that did not reach this Board for review. It involved a conviction under a French statutory provision for issuing checks without having the necessary funds on deposit. That statute did not require intent to defraud but did require the element of bad faith. The discussion there related primarily to the element of bad faith, and the Service concluded that it was not established that the crime involved moral turpitude. We do not consider that case relevant since the statutory provision in this respondent's case does not involve the term "bad faith." In that case, at pages 279–80, there is a statement reading as follows: "Under the standards prevailing in the United States the crime of which this alien was convicted would involve moral turpitude only if the offense was committed with intent to defraud." We do not believe that a statement so broad was necessary there. It seems to imply that issuing a worthless check in the United States would never involve moral turpitude unless the statute of the particular State expressly made the intent to defraud an element of the crime. For the reasons indicated below, we disapprove any such implication from the quoted statement

In *Matter of B—*, 4—297, *supra*, the Ohio and Indiana statutory provisions, by their specific language, made the intent to defraud an essential element of the crime. Hence, that fact alone made the offense one involving moral turpitude. On the other hand, it does not follow that the absence of this element from the statutory language makes a worthless check offense one that does not involve moral turpitude.

The statutory provision under which this respondent was convicted specifically requires knowledge on the part of the maker of the check that he does not have sufficient funds in the bank for the payment of the check, and we believe that issuing a check under such circumstances is tantamount to an intention to defraud. This is particularly so since any possibility that the check might have been issued inadvertently or negligently is ruled out by the provision of section 835(b) which affords the maker of the check ten days within which to arrange payment.

In *Jordan* v. *DeGeorge*, 341 U.S. 223 (1951), the Court was considering convictions for conspiracy to defraud the United States of taxes and held that the offenses involved moral turpitude. However, the Court went beyond that and said (p. 232): "* * * the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude" and that the phrase "crime involving moral turpitude" has without exception been construed to embrace fraudulent conduct. One of the cases cited by the Court as involving an intent to defraud was *United States ex rel. Popoff* v. *Reimer*, 79 F.2d 513 (C.C.A. 2, 1935). Popoff had been convicted under 8 U.S.C. 414, 1934 ed., for knowingly aiding an alien not entitled thereto to apply for or to secure naturalization, *etc.* Although the statute did not contain any element of intent to defraud the Government, the Circuit Court of Appeals stated that the appellant's crime necessarily was aiding the applicant to commit a fraud upon the Government and that the offense involved moral turpitude.

In *Matter of R—*, 5—29 (approved by Atty. Gen., 1952), we reached the conclusion that moral turpitude was involved in the conviction of an alien for being a party to the making of a false statement concerning the alien's nonliability for military service in violation of 50 U.S.C. App. 311. Although the statutory provision contained no language which could be considered as making the intent to defraud an element of the crime, we held (p. 38) that fraud was inherent in the offense. In *Matter of G—R—*, 2—733 (approved by Atty. Gen., 1947), we held that assault with a deadly weapon involved moral turpitude although the conviction was under a statute which had been amended so that "with intent to do bodily harm" had been deleted.

In *Seaboard Oil Co.* v. *Cunningham*, 51 F.2d 321 (C.C.A. 5, 1931), cert. den. 284 U.S. 657, the court considered two sections of the laws of Florida relating to the issuance of checks without having sufficient funds on deposit for the payment thereof. The court stated (p. 324) that neither of the sections by express words made the intent to defraud an element of the crime, but that the general rule is that criminal intent is an implied and necessary ingredient.

In view of the foregoing, it is our considered opinion that the crime set forth in section 835(a), Title 14, Virgin Islands Code, involves moral turpitude, and we conclude that the respondent is deportable on the charge stated in the order to show cause. During the hearing, the respondent stated that he desired to apply for voluntary departure, but he is not eligible for that relief. Section 244(e) of the Immigration and Nationality Act prohibits the granting of voluntary departure to an alien who is deportable under section 241(a)(4) unless he is eligible for suspension of deportation under paragraphs (4) or (5) of section 244(a). In addition, the respondent is unable to prove the required good moral character because of the provisions of section 101(f)(3) of the Act.

It appears that the respondent's wife is an alien lawfully admitted for permanent residence. The special inquiry officer indicated to the respondent that he could request, in the deportation proceeding, that the crime be waived; that the matter of submitting such an application would be deferred temporarily; and that the respondent would be given an opportunity to submit the application if the special inquiry officer concluded that he was deportable. The respondent is not eligible to apply, during the deportation proceeding, for a waiver under section 212(g) of the Immigration and Nationality Act, as amended September 26, 1961, but such application is to be filed with the American consular officer at the time the alien may apply for a new immigrant visa.[1] *Matter of DeF—*, 8—68 (Atty. Gen., 1959); *Matter of DeG—*, 8—325 (Atty. Gen., 1959); 8 CFR 212.7(a). The respondent designated Panama as the country to which he is to be deported, and the special inquiry officer informed him that if Panama refused to accept him deportation would be directed to England.

**ORDER:** It is ordered that the special inquiry officer's order terminating the deportation proceeding be withdrawn.

*It is further ordered* that the respondent be deported from the United States to Panama, or in the alternative to England, on the charge stated in the order to show cause.

---

[1] We are not here concerned with applications made under sections 245 and 249 of the Immigration and Nationality Act, and filed in accordance with the provisions of 8 CFR 242.17.