## MATTER OF CHOUINARD

### In Deportation Proceedings

### A-13463469

### *Decided by Board October 10, 1966*

Respondent's conviction of the offense of "illegal use of a credit card," as defined by section 28.416(1), Michigan Statutes Annotated, is conviction of a crime involving moral turpitude since an intent to defraud may be implied notwithstanding the statute makes no specific reference to such intent.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—After entry convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, to wit: simple larceny (Michigan), and illegal use of a credit card (Michigan).

An order entered by the special inquiry officer on April 8, 1966 directs the respondent's deportation to Canada on the charge that after entry he has been convicted of two crimes involving moral turpitude not arising out of a single scheme of misconduct, to wit: simple larceny (Michigan) and illegal use of a credit card (Michigan) (8 U.S.C. 1251(a)(4)). The special inquiry officer certified his decision to the Board of Immigration Appeals for review and final decision on the issue of whether as a matter of law a conviction for violation of section 28.416(1) of the Michigan Stautes Annotated involves moral turpitude.

The respondent is an unmarried male alien, 20 years of age, who entered the United States for permanent residence on August 13, 1963. He was convicted in the Municipal Court at Allen Park, Michigan for the offense of simple larceny on April 26, 1965. It is well established that this offense involves moral turpitude. (*Matter of P—*, 4 I. & N. Dec. 252, Act. A.G., March 2, 1951.)

The respondent was convicted on a plea of guilty in the Recorder's Court in Detroit, Michigan on February 23, 1965 of the offense of

839

"illegal use of a credit card" which is defined by section 28.416(1) of the Michigan Statutes Annotated as follows:

Obtaining credit by false device Sec. 219a. Any person who knowingly obtains or attempts to obtain credit, or purchases or attempts to purchase any goods, property or service, by the use of any false, fictitious or counterfeit credit card, credit number, telephone number or other credit device, or by the use of any credit card, credit number, telephone number or other credit device of another without the authority of the person to whom such card, number or device was issued, or by the use of any credit card, credit number, telephone number or other credit device in any case where such cards, number or device has been revoked and notice of revocation, as provided in section 210b, has been given to the person to whom issued, is guilty of a misdemeanor. (CL '48, § 750.219a.)

According to the complaint which is set forth in Appendix A of this opinion, the offense committed by the respondent is covered by that portion of the statute which reads: "Any person who knowingly obtains or attempts to obtain credit . . . by the use of any credit card, credit number, telephone number or other credit device of another without the authority of the person to whom such card, number of device was issued, is guilty of a misdemeanor." The question before us is whether under the Michigan Statutes the crime charged in the complaint requires the proof of a criminal intent to defraud.

The special inquiry officer answers this question in the affirmative. He relies on our decision in *Matter of M—*, 9 I. & N. Dec. 743 (June 28, 1962), wherein we held that the drawing and delivering of a worthless check in violation of a statute of the Virgin Islands is a crime involving moral turpitude notwithstanding the fact that the statute did not state on its face that it required the proof of an intent to defraud. We reasoned that a criminal intent to defraud is an implied and necessary element of a statute which punishes one who, at the time of issuing a worthless check, knows "that the maker or drawer has insufficient funds on deposit to cover the check." We said that the issuing of a check under such circumstances necessarily involves an intention to defraud.

We are confronted with a similar statute in the case before us. The respondent knowingly purchased two automobile tires valued at $68.50 "by the use of a false, fictitious or counterfeit credit card . . . to wit: "a credit card of another . . : without the authority of the said person . . ." The respondent testified that he was not acquainted with the owner of the credit card; that the credit card was given to him by a friend; that he obtained about $115 worth of merchandise with the card; that he signed the name of the credit card owner

840

when he received the merchandise and that he made no attempt to return the credit card to the person whose name appeared thereon.

We note that section 28.416(1) of the Michigan Statutes Annotated (*supra*) does not contain the phrase "with intent to defraud." However, an intent to defraud may be implied despite the fact that a statute makes no specific reference to such an intent. This is especially true where scienter is an element of the offense as defined by the statute. Cf. *Ramirez v. United States*, 318 F.2d 155 (C.A. 9, May 1963); *Golden v. United States*, 318 F.2d 357 (C.A. 1, 1963); *Matter of Batten*, Int. Dec. No. 1494 (B.I.A., August 17, 1965).

Crimes in which fraud is an element have always been regarded as involving moral turpitude (*Jordon v. De George*, 341 U.S. 223 (1951). Furthermore, the phrase "crime involving moral turpitude" has without exception been construed to embrace fraudulent conduct. *United States ex rel. Popoff v. Reimer*, 79 F.2d 513 (C.A. 2, 1935); *Seaboard Oil Company v. Cunningham*, 51 F.2d 321 (C.A. 5, 1931), cert. den. 284 U.S. 657. It is clear from the evidence before us that the respondent fully intended to permanently deprive the owner of the service station of the value of the automobile tires he purchased by fraudulently using the credit card which he knew full well belonged to someone else. It is our considered opinion that in this particular instance the crime for which the respondent was convicted in the Recorder's Court at Detroit, Michigan on February 23, 1963, to wit, illegal use of a credit card, does involve moral turpitude.

The respondent has applied for the privilege of voluntary departure in lieu of deportation. The special inquiry officer finds the respondent ineligible for relief since he has been found deportable as one who has been convicted of two offenses involving moral turpitude. The respondent is precluded from a finding of good moral character under section 101(f)(3) of the Immigration and Nationality Act for the reason that he has been convicted of two crimes involving moral turpitude within the past five years. We affirm the finding of the special inquiry officer that the respondent is ineligible for the privilege of voluntary departure. An appropriate order will be entered.

ORDER: The decision and order of the special inquiry officer dated April 8, 1966 directing the alien's deportation to Canada on the charge stated in the order to show cause is hereby affirmed.

## APPENDIX A

The complaint and examination of the service station owner from whom the tires were purchased reads as follows:

The complaint and examination of Mirl Siebert taken and made before the undersigned, ——————————— a Judge of the Recorder's Court, of the City of Detroit, in said County, upon the 23rd day of February, A.D. 1965, who being duly sworn, says that heretofore, to wit, on the 20th day of February 1965 at the City of Detroit and in the County aforesaid ROLLAND JOSEPH CHOUINARD, late of the City of Detroit, County and State aforesaid, did then and there knowingly purchase goods, property or service, to wit: two tires the value of $68.80 from Standard Oil Division of American Oil Co., a foreign corporation, by the use of a false, fictitious or counterfeit credit card, credit number, telephone number or other credit devices, to wit: a credit card of another, to wit: John McCracken, without the authority of the said person, to wit: John McCracken, to whom such card, number or other credit device was issued.