MATTER OF HALLER

In Deportation Proceedings

A-10193857

*Decided by Board July 10, 1967*

(1) Notwithstanding respondent and his wife (whose marriage has never been legally terminated) have been separated for about 7 years, statutory eligibility for a waiver of the criminal grounds of excludability pursuant to section 212 (h), Immigration and Nationality Act, as amended, is established since hardship to his wife and 2 U.S. citizen children would result from his deportation as his wife is not, and has not been working for many years, depending on respondent for the support of herself and their children and he has always, except while serving sentence, supported them.

(2) Notwithstanding respondent would, upon the petition of his wife, be eligible for second preference classification and thereby exempt from the labor certification requirement, since he can show visa availability only under the open nonpreference portion of the quota, he is required to present a labor certification and in the absence thereof or exemption from presentation thereof he is excludable under section 212(a)(14) of the Act and, therefore, statutorily ineligible for the benefits of section 245.

CHARGES:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Two crimes involving moral turpitude committed after entry: issuing fraudulent check (New York 1962); using mails to defraud, using interstate telephonic communication to defraud, conspiracy to defraud 1963.

ON BEHALF OF RESPONDENT: James J. Cally, Esquire
150 Broadway
New York, New York 10038

This is an appeal from the decision of the special inquiry officer finding respondent deportable as charged, holding him to be statutorily ineligible for any form of relief, and ordering his deportation to Australia, with the alternate designation of Germany.

Respondent is a 51-year-old married male alien, a native and citizen of Germany. He last entered the United States on or about June 10, 1953 as a nonimmigrant visitor for business. He had been married in Newark, New Jersey on December 23, 1951 to Maria Imelda Paprotna,

319

who had been admitted to the United States for permanent residence on October 10, 1951. Her petition for preference quota status for him was approved and he became a lawful permanent resident under the provisions of section 245 on March 5, 1957. There are two children of that marriage, Karl Haller, Jr., 15, and Imelda Gertrude Haller, 13, who are native born United States citizens.

On November 9, 1962, respondent, represented by counsel, was convicted on his plea of guilty in the County Court, County of Westchester, New York, of "Issuing a fraudulent check as a misdemeanor." The sentence was imprisonment for the amount of time he had already spent in jail (which he stated was about 90 days), and he was ordered to make restitution in the amount of $140, which he did. At the time of sentencing, the judge made the following statement:

It is the Courts interest in sentencing the defendant on this conviction that pursuant to sec. 1251(b) (2) of Title 8 U.S.C.A. that the defendant shall not be deported pursuant to provision sec. 1251 (sub. a) (4) Title 8 U.S.C.A. The Court hereby recommending to the Attorney General of the United States that this Alien defendant not be deported. Accordingly the Court will give due notice hereof to the representative in New York, of the U.S. Immigration Service and the District Attorney of Westchester County. (Ex. 2)

There is no evidence that any notice was ever given to the Immigration and Naturalization Service, prior to the making of the recommendation, that it was the judge's intention to make it, or even, once it had been made, that the judge's direction for notice to the Service was carried out. The effect of this omission will be discussed below.

Where, in a conviction for passing a worthless check, fraud is an essential element of the crime, we have held that it is a crime involving moral turpitude (cf. *Matter of M—*, 9 I. & N. Dec. 743). In this case, fraud was a basic characteristic of the offense and the crime is, therefore, one involving moral turpitude.

On November 18, 1958, a seven count indictment was filed against respondent and his wife in the United States District Court, Southern District of New York. The first four counts charged violation of Title 18, U.S.C., section 1341, using the United States mails to defraud; the fifth and sixth counts charged violation of Title 18, U.S.C., section 1343, using interstate telephonic communications to defraud; the seventh count charged both defendants with conspiring to violate sections 1341 and 1343. On November 7, 1963, respondent having pleaded not guilty and having been found guilty, by a jury, of counts 1, 2, 5 and 7, he was sentenced to imprisonment for one year on each count, the sentences to run concurrently. An appeal was taken to the United States Court of Appeals for the Second Circuit which, on July 7, 1964 affirmed the judgment of the lower court.

320

In *Jordan* v. *DeGeorge,* 341 U.S. 223 (1951), the Supreme Court held that: "* * * crimes in which fraud was an ingredient have always been regarded as involving moral turpitude * * *". Using the mails and interstate telephonic communications to defraud clearly comes within the scope of the holding in *Jordan* v. *DeGeorge,* and the conspiracy here charged likewise involves moral turpitude since the substantive crimes which were the subject of the conspiracy involve moral turpitude (cf. *Matter of S—,* 2 I. & N. Dec. 225).

Thus, respondent has twice been convicted of crimes involving moral turpitude, and is deportable under the provisions of section 241(a)(4), unless he can come within the provisions of section 241(b). Counsel urges that the first conviction, in which the judge at the time of the initial sentencing recommended that respondent not be deported, has been extinguished for deportation purposes under section 241(b)(2) because of that recommendation. Unfortunately, however, the judge, although referring to the specific section and subsection of the law, did not comply with the conditions set forth therein. These require that the representatives of the interested State, the Service, and the prosecution authorities must be given notice *prior* to the making of such a recommendation and shall be granted an opportunity to make representations in the matter. Here, the judge directed that notice be given to them of the *fait accompli,* the recommendation already made (and even this, apparently through clerical oversight, was not done). While section 241(b)(2) is remedial in nature and should be interpreted to accomplish the purposes for which it was enacted, it must also be exercised with respect for the safeguards enacted into it. In a case in which the facts were substantially similar (*Matter of I—,* 6 I. & N. Dec. 426), and the issue of law was identical, we held:

* * * It is clear from the statute that Congress intended that due notice should be given to the State, the Service and to prosecution authorities and that they were to have the opportunity of making representations before the court made its decision as to whether to recommend that the alien be not deported. It is our considered opinion that since the action of the court did not comply with the mandatory provisions of section 241(b) of the Immigration and Nationality Act, the recommendation against deportation is ineffective.

The cases cited by counsel are not squarely in point and cannot overcome our holding in *Matter of I—.*

Respondent applied for adjustment to lawful permanent resident status under section 245, coupled with a request for a waiver under section 212(h) of his excludability under section 212(a)(9) based on his convictions. His present family situation, which is somewhat unusual, is an important factor in determining his eligibility for the relief he seeks. Although his marriage has never been legally termi-

nated, his wife and he have been separated for about seven years. He has always, except for the time when he was serving his sentence, supported his wife and children, and within approximately two months of his release from prison in 1965, he was sending her $50 every week, which he soon raised to $70 per week. However, he does not know where his wife and children live. The money is mailed to his wife's brother, who then turns the money over to the wife, and who has been forbidden by her to tell respondent where she and the children are. Although she is not working and has not been for many years, depending on respondent for the support of herself and her children, she is unwilling to associate herself in any way with respondent's attempt to qualify for relief from deportation, or to take any steps to help him. Several efforts by the Service to interview her were unsuccessful because of her failure to keep the appointments made. When contacted, although admitting respondent's monetary assistance, she clearly showed her desire not to be involved with him in any way, indicating that the Government could deport him, for all she cared.

The special inquiry officer, in his evaluation of the family situation, held that respondent was statutorily eligible for a waiver of excludability on criminal grounds, because deportation would undoubtedly result in hardship to his wife and children, and his admission would not be contrary to the national welfare, safety or security of the United States. But it was unnecessary to rule on whether it should be granted, in the exercise of discretion, because there was another impediment to eligibility for adjustment which had not been overcome. As the spouse of a lawful permanent resident alien, respondent could be accorded second preference quota status upon the petition of his wife, and as the beneficiary of such a preference petition, he would not come within the labor certification provisions of section 212(a)(14). However, his wife has not filed such a petition for him in connection with these proceedings, and has apparently not indicated any willingness to do so. While respondent can show quota availability without a preference, the nonpreference portion of the quota for Germany presently being current, as a nonpreference applicant he comes within the provisions of section 212(a)(14). He would be working in the United States, and would be required to present a labor certification, or to establish that, under the various rules and regulations governing this area (Title 29 CFR, section 60; Title 8 CFR, section 204.1 et seq.; section 212.8, etc.), he is exempt from the requirement because of the character of his proposed occupation. No labor certification has been presented or offered, nor has any claim been advanced that respondent is exempt from the requirement.

On the record before us, the special inquiry officer correctly found

respondent deportable as charged, and statutorily ineligible for adjustment of status under section 245. As to the alternative request for voluntary departure, the special inquiry officer pointed out that respondent is precluded from establishing good moral character under section 101(f)(7) for any period which includes December 1964 to October 1965, because his imprisonment during this time exceeded 180 days.

In summary, respondent has twice been convicted of crimes involving moral turpitude and is deportable under section 241(a)(4) in spite of the recommendation against deportation made by the judge at the time of the first conviction, because the recommendation did not comply with the mandatory conditions in section 241(b)(2) and hence was ineffective. Respondent is statutorily eligible under section 212(h) for a waiver of excludability arising from his two convictions, and can show quota availability, but because that quota availability stems not from a preference petition by his wife but from an open nonpreference quota, he is subject to the labor certification provisions of section 212(a)(14) and he has made no showing that he has, or can obtain, or is otherwise exempt from the necessity for, a labor certification. He is, therefore, upon the present record, excludable under the provisions of section 212(a)(14) and statutorily ineligible for adjustment of status under section 245. He is precluded from establishing good moral character for the past five years by section 101(f)(7) because during that period he has been imprisoned for 180 days or more, and, is, therefore, statutorily ineligible for voluntary departure. He has properly been found deportable and ordered deported.

It is urged on appeal that respondent was improperly deprived of his right to counsel. A reading of the record does not support this contention. Respondent, at the first session of the hearing (the only one of the three at which he was not represented), was clearly advised of his right to counsel. While it appeared that he did wish to be represented, he wanted this only if the special inquiry officer could guarantee to him that he would not be detained by the Service during the period of the adjournment to obtain counsel. The special inquiry officer advised respondent that the question of detention or release was not within his province and again offered to adjourn the proceedings if respondent wished to seek counsel. Respondent was uncertain and there was an off-the-record discussion with the special inquiry officer during which respondent was advised, in answer to his inquiries, as to the possible outcome of the hearing and his right to appeal. The special inquiry officer then asked respondent whether he had decided to proceed without counsel and respondent said that he had. There is no evidence whatever of counsel's claim that respondent "was advised, that if he didn't

323

have his hearing, he would be incarcerated until the hearing was had on his matter with Immigration." (Brief on Appeal, top of p. 3). There is no evidence of duress or of anything other than a knowing, intentional and voluntary waiver of counsel by respondent. A reading of the portion of the hearing that was conducted without counsel does not show any procedure which could in any way be characterized as depriving respondent of his rights.

Under the present circumstances and on the record before us, no valid reason has been advanced that would justify a reversal or modification of the special inquiry officer's decision.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.