# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARMANDO NAVARRO-LOPEZ,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 04-70345

Agency No.
A92-283-781

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 13, 2006—San Francisco, California

Filed September 19, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
Harry Pregerson, Stephen Reinhardt, Alex Kozinski,
Diarmuid F. O'Scannlain, Michael Daly Hawkins,
Sidney R. Thomas, Kim McLane Wardlaw,
William A. Fletcher, Richard A. Paez, Richard C. Tallman,
Johnnie B. Rawlinson, Richard R. Clifton, Jay S. Bybee, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Pregerson;[1]
Concurrence by Judge Reinhardt;
Dissent by Judge Tallman;
Dissent by Judge Bea

---

[1]This opinion serves as the opinion of the majority of the court save for the four paragraphs that comprise section A.2. That section is to be viewed as Judge Pregerson's special concurrence.

12563

**COUNSEL**

James Robert Patterson, Law Office of Lilia S. Velasquez, San Diego, California, for the petitioner.

Francis W. Fraser, Department of Justice, Washington, D.C., for the respondent.

**OPINION**

PREGERSON, Circuit Judge:

Armando Navarro-Lopez petitions for review of a final order of removal, arguing that the Board of Immigration Appeals ("BIA") erred in summarily affirming the immigration judge's ("IJ") determination that Navarro-Lopez's conviction under California Penal Code section 32 for accessory after the fact was a conviction for a crime involving moral turpitude. Based on Navarro-Lopez's conviction, the IJ concluded he was inadmissible and ineligible for cancellation of removal. We have jurisdiction pursuant to 28 U.S.C. § 1252(a)(1), and we grant the petition.

## FACTS AND PRIOR PROCEEDINGS

Navarro-Lopez is a native and citizen of Mexico. He is married to a U.S. citizen and has applied for permanent residency through his wife. He has two U.S. citizen children, ages thirteen and sixteen, and a twenty-four-year-old child who is a legal permanent resident. He has been working in the United States for over twenty years, and he and his wife own their own home.

Navarro-Lopez entered the United States in June 1984. On August 9, 1999, Navarro-Lopez pled guilty to one count of California Penal Code section 32, accessory after the fact. He was sentenced to 270 days in jail and three years probation. In February 2001, Navarro-Lopez traveled to Tijuana, Mexico to visit his mother who was gravely ill. On February 11, 2001, Navarro-Lopez tried to re-enter the United States at the San Ysidro point of entry. When he presented his employment authorization card, the border patrol denied him entry and detained him. The Immigration and Naturalization Service ("INS")[2] thereafter commenced removal proceedings.

The INS charged Navarro-Lopez with being inadmissible because he did not have valid entry documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and because he had been convicted of a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). At his merits hearing, Navarro-Lopez conceded inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I), but argued that he had not been convicted of a crime of moral turpitude. Although Navarro-Lopez admitted having been convicted under California Penal Code section 32 for accessory after the fact, he disputed the INS's categorization of that crime as one involving moral turpitude.

---

[2]On March 1, 2003, the INS was dissolved as an independent agency within the United States Department of Justice, and its functions were transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135.

The IJ nonetheless held that Navarro-Lopez's accessory after the fact conviction constituted a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). The IJ, therefore, held Navarro-Lopez removable. The IJ also denied Navarro-Lopez's application for cancellation of removal on the grounds that Navarro-Lopez had been convicted of a crime involving moral turpitude. Further, the IJ held that because Navarro-Lopez had been convicted of a crime involving moral turpitude, Navarro-Lopez did not have the requisite good moral character to be eligible for cancellation of removal. Thus, the IJ's characterization of California Penal Code section 32 as a crime involving moral turpitude served to bar Navarro-Lopez's application in two ways: (1) a conviction for a crime involving moral turpitude renders someone ineligible for cancellation or removal and (2) a conviction for a crime involving moral turpitude demonstrates a lack of the requisite good moral character necessary to qualify for cancellation of removal.

The IJ ordered Navarro-Lopez removed to Mexico. Navarro-Lopez timely appealed to the BIA, which summarily affirmed the IJ on December 24, 2003. Navarro-Lopez timely filed this petition for review on January 22, 2004.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the petition under 8 U.S.C. § 1252 as amended by section 106(a) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (codified as amended at 8 U.S.C. § 1252(a)(2)(D)). *See Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005). While we do not normally have jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed [certain criminal offenses]," 8 U.S.C. § 1252(a)(2)(C), including crimes involving moral turpitude,[3] we are not barred from

_____

[3]*See* 8 U.S.C. §§ 1252(a)(2)(C), 1182(a)(2), & 1227(a)(2)(A). This case involves only a single alleged crime of moral turpitude, which alone

hearing the constitutional claims or questions of law raised in a petition. 8 U.S.C. § 1252(a)(2)(D). Whether Navarro-Lopez's conviction is a crime involving moral turpitude is a question of law, which we have jurisdiction to reach. *See Notash*, 427 F.3d at 696.

We review de novo "whether a state statutory crime constitutes a crime involving moral turpitude." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005). "Where the BIA affirms an IJ's order without opinion, we review the IJ's decision as the final agency action." *Khup v. Ashcroft*, 376 F.3d 898, 902 (9th Cir. 2004).

## ANALYSIS

Navarro-Lopez asserts that the IJ erred in deciding that a conviction for accessory after the fact under California Penal Code section 32 constitutes a crime involving moral turpitude. Navarro-Lopez asks that we remand his petition to the BIA for a grant of cancellation of removal. To qualify for cancellation of removal, an alien must demonstrate, inter alia, that he has not been convicted of a crime of moral turpitude and that he has maintained good moral character for the ten years immediately preceding the date of his application. 8 U.S.C. § 1229b(b)(1). Under 8 U.S.C. § 1101(f)(3), no person may be found to have good moral character who has been convicted of a crime listed in 8 U.S.C. § 1182(a)(2)(A), which includes a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I). The IJ did not rely on facts other than Navarro-Lopez's conviction when he determined that Navarro-Lopez lacked good moral character. Thus, Navarro-Lopez's eligibility for cancellation of removal turns on

---

would not fall within the jurisdictional limitations of § 1252(a)(2)(C). However, because the crime rendered Navarro-Lopez inadmissible and occurred before his re-entry into the United States, it falls within the scope of § 1182(a)(2)(A)(i), and accordingly, § 1252(a)(2)(C).

whether a conviction under California Penal Code section 32 constitutes a crime of moral turpitude.

To determine whether a conviction is for a crime involving moral turpitude, we apply the categorical and modified categorical approaches established by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 599-602 (1990).**[4]** *Cuevas-Gaspar,* 430 F.3d at 1017.

## A.   The Categorical Approach

### 1.

The categorical approach requires us to "make a categorical comparison of the elements of the statute of conviction to the generic definition [of the crime], and decide whether the conduct proscribed by [the statute] is broader than, and so does not categorically fall within, this generic definition." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003). Therefore, we begin the categorical approach by determining the generic elements of a crime involving moral turpitude for the purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I). *See Taylor*, 495 U.S. at 580-81.

**[1]** A difficulty arises here as there are no statutorily-established elements for a crime involving moral turpitude. Courts, however, have consistently defined "moral turpitude"

---

**[4]**In his dissent, Judge Bea argues that we should not apply the *Taylor* categorical approach when determining whether a crime involves moral turpitude. This plainly conflicts with our precedent. *See, e.g., Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163 (9th Cir. 2006)*; Kepilino v. Gonzales,* 454 F.3d 1057, 1060-62 (9th Cir. 2006); *Cuevas-Gaspar,* 430 F.3d at 1017. Instead, Judge Bea urges us to look at the manner in which moral turpitude has been applied in judicial decisions. Bea Dissent at 12603. This is in essence how we begin the categorical approach for crimes involving moral turpitude. As explained below, moral turpitude lacks a statutory definition and instead we look to common law (i.e. "judicial decisions") to determine the generic definition of the crime.

as involving conduct that is inherently base, vile, or depraved, and contrary to the private and social duties man owes to his fellow men or to society in general. *See, e.g., Morales v. Gonzales*, 478 F.3d 972, 978 (9th Cir. 2007). This is the definition employed by the BIA, *see, e.g., Matter of E—*, 2 I&N Dec. 134, 140 (BIA 1944), and the definition is relatively consistent throughout the federal courts, *see, e.g., Sosa-Martinez v. U.S. Att'y Gen.*, 420 F.3d 1338, 1341-42 (11th Cir. 2005)*; Padilla v. Gonzales*, 397 F.3d 1016, 1019 (7th Cir. 2005) (also asking whether the act involved arouses "serious" indignation in the law-abiding public); *Omagah v. Ashcroft*, 288 F.3d 254, 259-60 (5th Cir. 2002) (further adding that morally turpitudinous acts are "per se morally reprehensible and intrinsically wrong"); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (adding that morally turpitudinous conduct "shocks the public conscience").

This widespread judicial consistency is supported by basic notions of moral turpitude. Moral turpitude involves "immoral or depraved" conduct. *Random House Dictionary of English Usage Unabridged* 930 (1973). Crimes of moral turpitude "involv[e] grave infringement of the moral sentiment of the community." *Webster's New International Dictionary Unabridged* 1593 (2d ed. 1940). Thus, the generic definition of a crime involving moral turpitude is a crime involving conduct that (1) is base, vile, or depraved and (2) violates accepted moral standards.[5]

---

[5]In his oral decision, the IJ set forth a slightly different definition of moral turpitude, stating that "[a] crime involving moral turpitude generally refers to conduct which is inherently base, vile, or depraved, *or* is contrary to the accepted rules of morality and to the duties owed between men in society." (emphasis added). The IJ's definition differs from the generic definition of moral turpitude in one key respect. The IJ stated that moral turpitude involves conduct that is *either* (1) inherently base, vile, or depraved *or* (2) contrary to the accepted duties owed between man and society. This definition is incorrect because crimes of moral turpitude involve *both* elements.

**2.**

In his dissent, Judge Tallman states that all crimes involving morally turpitudinous conduct fall into one of two categories: those involving fraud and those involving grave acts of baseness or depravity. Tallman Dissent at 12591; *accord* Reinhardt Conc. at 12582. The dissent draws this formulation from *Carty v. Ashcroft*, 395 F.3d 1081 (9th Cir. 2005), wherein we stated: "Crimes of moral turpitude *are of basically two types*, those involving fraud and those involving grave acts of baseness or depravity." *Id.* at 1083 (emphasis added). Although *Carty* can be read to stand for the proposition that crimes involving moral turpitude *generally* fall into these two categories, these two categories do not define moral turpitude. As explained above, crimes involving moral turpitude involve base, vile, and depraved conduct that shocks the conscience and is contrary to the societal duties we owe each other.

**[2]** Crimes involving fraud are not a per se category of crimes involving moral turpitude. Crimes involving fraud, depending on the circumstances, merely present examples of conduct that may fall under the umbrella of inherently base and vile conduct that shocks the conscience. Indeed, some crimes involving the intent to defraud (especially in the dissent's broad definition, which encompasses any crime involving "dishonesty") are not necessarily crimes involving moral turpitude.[6]

---

The IJ cited *Matter of Flores*, 17 I&N Dec. 225 (BIA 1980), for his definition, but the IJ appears to have misread that case. *Matter of Flores* set forth the correct definition of moral turpitude: "Moral turpitude is a nebulous concept which refers generally to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Matter of Flores,* 17 I&N Dec. at 227. Thus, *Matter of Flores* does not support the definition of moral turpitude used by the IJ.

[6]In section III of his concurrence, Judge Reinhardt states that my approach dilutes the meaning of moral turpitude and would broaden the

**[3]** Crimes "involving fraud" encompasses such a broad category of possible offenses, that it is not proper simply to label all such crimes morally turpitudinous. There may be crimes involving fraud that *do* involve moral turpitude. For example, someone perpetrating a vast fraud to deprive widows of pension benefits or employees of ERISA benefits would qualify as base, vile, depraved, and shocking society's conscience. On the other hand, some actions involving fraud may not qualify as base, vile, and depraved. Take the example of a welfare mother who falsely endorses and then cashes a social security check mistakenly issued to her deceased father. The woman knows that she does not have the right to the money. She forges her father's signature. But, she needs money to feed her hungry children. Although such conduct is illegal, it is not base, vile, or depraved. Both of these crimes involve fraud, but they present very different circumstances. Because such a large swath of crimes involve fraud, we should conduct an individualized analysis for offenses involving fraud — not immediately label them as involving moral turpitude.

**[4]** As this circuit and the BIA have consistently held, we must engage in an individualized analysis of each challenged statute to determine whether it falls under the rubric of crimes involving moral turpitude. *See, e.g., Morales*, 578 F.3d at 978; *Cuevas-Gaspar*, 430 F.3d at 1017. As the majority of crimes involve some element of dishonesty — from Enron executives operating massive fraud on the public to a twenty-year-old

category of crimes involving moral turpitude. Reinhardt Conc. at 12585. My approach does exactly the opposite. Although prior case law describes fraud as a category of crimes involving moral turpitude, crimes involving fraud *can* be crimes of moral turpitude but are not *necessarily* crimes involving moral turpitude. Judge Reinhardt interprets this as "compelling" us to label all crimes involving fraud as base, vile, and depraved. Reinhardt Conc. at 12583. I specifically hold that crimes involving fraud do *not* compel such a holding. A crime involving moral turpitude must be one that is base, vile, or depraved and shocks society's conscience. Where a crime includes an element of fraud, this same standard must be met.

using his older brother's ID to buy a beer — classifying all such crimes as involving moral turpitude would rob the phrase "moral turpitude" of any distinct meaning. Thus, while Judge Tallman's dissent and Judge Reinhardt's concurrence inquire into whether accessory after the fact is a crime involving fraud, the real question is whether accessory after the fact is a crime that is inherently base, vile, or depraved and contradicts accepted moral standards.[7]

## 3.

After determining the generic elements of a crime, the next step of the categorical approach is to compare those elements with the state statute in question. *Cuevas-Gaspar*, 430 F.3d at 1017. Here, we assess whether accessory after the fact under California Penal Code section 32 is a crime involving moral turpitude. Whether a crime involves moral turpitude "is determined by the statutory definition or by the nature of the crime [and] not by the specific conduct that resulted in the conviction." *McNaughton v. INS,* 612 F.2d 457, 459 (9th Cir. 1980) (per curiam). We may not consider the circumstances under which the crime was committed.

California Penal Code section 32 provides:

> Every person who, after a felony has been committed, harbors, conceals or aids a principal in such fel-

---

[7]Even if we were to hold that crimes involving fraud are always crimes involving moral turpitude, accessory after the fact pursuant to California Penal Code section 32 is not a crime necessarily involving fraud. It is not enough that an offense involve some sort of sneaky or dishonest behavior — we look for intent to *defraud*. *See Carty*, 395 F.3d at 1084 (holding that a statute prohibiting conduct with "specific intent to evade a tax" did not contain, as an essential element of the offense: an intent to defraud)*; see also Goldeshtein v. INS*, 8 F.3d 645, 647-48 (9th Cir. 1993). A review of the statutory language of California Penal Code section 32 demonstrates that intent to defraud is not an essential element of a conviction under the statute.

ony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.

**[5]** Under California law, the crime of accessory after the fact has the following essential elements:

(1) someone other than the person charged as an accessory, that is to say, a principal, must have committed a specific completed felony; (2) the accused must have harbored, concealed or aided the principal (3) with knowledge that the principal committed a felony; and (4) further, the hiding, concealing or harboring must be with the specific intent that the principal may escape from arrest and trial.

*People v. Prado*, 136 Cal. Rptr. 521, 523 (Ct. App. 1977). Thus, a conviction under section 32 requires knowing interference with the enforcement of the law with the specific intent to help a principal avoid arrest or trial.

The IJ applied his incorrect definition of moral turpitude[8] and then held that a conviction under California Penal Code section 32 necessarily implicates a crime of moral turpitude in all circumstances. He explained:

It is a crime involving moral turpitude because a conviction under this provision does show conduct contrary to the duty owed to society in general. His conviction was in contradiction of the enforcement of a state law relating to a felony. Furthermore, it involves knowledge that the individual that the respondent is harboring or aiding has committed such a felony, given the fact that it involves the

---

[8]*See supra* n.4.

> knowledge that the principal has committed the felony and the individual is [under]taking conduct, whether that be harboring or aiding. Such assistance to one known to have committed a felony is clearly contrary to the accepted rules owed between members of society.

The IJ based his holding on the fact that an accessory violates a duty owed to society to obey the law and not to impede the investigation of crimes. However, commission of *any* crime, by definition, runs contrary to *some* duty owed to society. If this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude. We certainly owe a duty to society not to destroy another's property, not to assault another, and not to break and enter private property. Yet, we have held that convictions for these acts do not categorically involve moral turpitude. *E.g.*, *Cuevas-Gaspar*, 430 F.3d at 1020 (burglary with intent to commit a crime within the residence); *Carr v. INS*, 86 F.3d 949, 950-51 (9th Cir. 1996) (assault with a deadly weapon); *Rodriguez-Herrera v. INS*, 52 F.3d 238, 239-40 (9th Cir. 1995) ("knowingly and maliciously . . . caus[ing] physical damage to property of another").

It is apparent that the IJ's definition of moral turpitude is overbroad because under his definition, all crimes would be crimes of moral turpitude. Such a reading of the statute is untenable. If Congress had intended *any* conviction to make an alien ineligible for cancellation of removal, it would have said so. There would be no reason to designate specific categories of crimes. For example, 8 U.S.C. § 1182(a)(2)(A)(i) states that aliens are inadmissible where they have committed a crime involving moral turpitude or a crime relating to a controlled substance. If all conduct "contrary to the duty owed to society in general" rendered an individual inadmissible under the prohibition on crimes involving moral turpitude, the second category of crimes relating to controlled substances would be mere surplusage.

**[6]** The IJ omitted the second crucial element of the definition of a crime involving moral turpitude: that the crime involve some level of depravity or baseness "so far contrary to the moral law" that it gives rise to moral outrage. *Jordan v. DeGeorge,* 341 U.S. 223, 236 n.9 (1951) (Jackson, J., dissenting). The crime of accessory after the fact need not involve grave acts of baseness or depravity. Determining whether a crime is base or depraved is a subjective decision about societal values. The broad range of acts proscribed under California Penal Code section 32 do not all give rise to moral outrage. "*Any* kind of overt or affirmative assistance to a known felon" can be the basis of a conviction under section 32. *People v. Duty*, 74 Cal. Rptr. 606, 609 (Ct. App. 1969) (emphasis added). The act of harboring a felon can be as simple as providing food or shelter to someone who has committed a felony — even where that person is a family member. *See United States v. Hill*, 279 F.3d 731, 736 (9th Cir. 2002). Yet such conduct hardly entails baseness or depravity.

Actions that are more harmful than the conduct underlying an accessory after the fact conviction have been deemed *not* to categorically involve moral turpitude. To hold that a conviction for accessory after the fact is necessarily a crime of moral turpitude leads to an absurd result where a principal who commits a crime may not have undertaken a morally turpitudinous act, but the person who gave the principal food and shelter necessarily did. *See* 9 U.S. Dep't of State Foreign Affairs Manual 40.21(a) n.2.4(b) ("[W]here an alien has been convicted of . . . accessory before or after the fact . . . and the underlying crime is not deemed to involve moral turpitude, then [8 U.S.C. § 1182](a)(2)(A)(i)(I) would not be applicable."); *cf. Goldeshtein v. INS*, 8 F.3d 645, 647 n.6 (9th Cir. 1993) ("[C]onspiracy to commit an offense involves moral turpitude only when the underlying substantive offense is a crime involving moral turpitude.")

The motivation underlying accessory crimes is often protection of a friend or of a family member during a time of

trouble, and such actions, while criminal, do not necessarily evidence moral depravity. Many states, including one in this circuit, have recognized the difficult choices facing the family members of an escaping felon and have exempted family members from accessory after the fact liability. *See* Nev. Rev. Stat. § 195.030. California, however, has no such explicit exception. Thus, in California, a wife could be convicted of harboring her husband, or a father or mother of harboring a son or daughter. It would be illogical to conclude that society in general would call the action of harboring one's son or daughter a crime that is inherently base or depraved when many states do not even consider such conduct criminal.

The Supreme Court recently examined the *Taylor* categorical approach and cautioned against employing "legal imagination" when determining whether a state statute falls under the generic definition of a crime. *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007). Specifically, the court stated that to find that a state statute falls outside of a generic definition, there must be a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.*

**[7]** The Supreme Court was indicating that we should not simply hypothesize unusual cases that would fall outside the generic definition of a crime. *See James v. United States*, 127 S. Ct. 1586, 1597 (2007). Indeed, the Court has explained that we should look to the "nature" of the offense at issue. *Id.* Thus, the question before us is whether California Penal Code section 32 describes a crime that by its nature involves moral turpitude. It clearly does not. Accessory after the fact is not a crime whose very nature is base, vile, or depraved; nor is it a crime necessarily contradicting moral standards.

Judge Tallman's dissent argues that *Duenas-Alvarez* requires us to provide specific examples of California prosecuting people under Penal Code section 32 for acts that would fall outside the generic definition for crimes involving moral

turpitude. Tallman Dissent at 12598. He presents a list of cases where defendants were prosecuted under section 32 for acting as accessories to serious crimes. This list misses the point. The issue is not whether in some cases violators of section 32 have been involved in a crime of moral turpitude. The issue is whether everyone prosecuted under that section has *necessarily* committed a crime involving moral turpitude. There is nothing inherent in the crime of accessory after the fact that makes it a crime involving moral turpitude in all cases.

A few examples illustrate this point. In a recent case, California prosecuted Malcolm, a juvenile, for accessory after the fact where the principal was charged with possession of an assault weapon. *In re Malcolm M.*, 54 Cal. Rptr. 3d 74 (Ct. App. 2007). Although the California Court of Appeal held that Malcolm was responsible for aiding and abetting instead of acting as an accessory after the fact, *id.* at 84, his case demonstrates that in California one can be charged and convicted with accessory after the fact for crimes that do not involve moral turpitude. No court has ever found possession of a weapon to be a crime involving moral turpitude. *Cf. Carr*, 86 F.3d at 950-51 (holding that assault with a deadly weapon was not a crime involving moral turpitude). Moreover, Malcolm's efforts to conceal a weapon by placing it under his feet, *see In re Malcom M.*, 54 Cal. Rptr. 3d at 77, do not demonstrate conduct that is by its nature base, depraved, or vile.

Additionally, people are regularly convicted under California Penal Code section 32 in California for harboring or concealing principals who have committed assault or burglaries. *See, e.g.*, *Shortridge v. Mun. Ct.*, 198 Cal. Rptr. 749 (Ct. App. 1984) (accessory to burglary of a trailer home); *People v. Luna*, 295 P.2d 457 (Cal. Ct. App. 1956) (accessory to assault); *Ex Parte Goldman*, 88 P. 819 (Cal. Ct. App. 1906) (accessory to theft of personal property). Such actions do not rise to the level of offending societal conscience. They do not constitute grave acts of immorality any more than any viola-

tion of the law does.⁹ We have held that neither burglary nor assault with a deadly weapon constitute crimes of moral turpitude. *Cuevas-Gaspar*, 430 F.3d at 1020 (burglary with intent to commit a crime within the residence); *Carr*, 86 F.3d at 950-51 (assault with a deadly weapon). Aiding and abetting such crimes would not demonstrate conduct involving moral turpitude. Acting as an accessory after the fact to such crimes should not necessarily do so either.

**[8]** Conduct underlying an accessory after the fact conviction does not necessarily involve conduct that involves baseness or depravity. Thus, California Penal Code section 32 refers to a potential set of crimes broader than the generic definition of a "crime involving moral turpitude." Under the *Taylor* categorical approach, Navarro-Lopez's conviction for accessory after the fact does not fall under the generic definition and was not for a crime involving moral turpitude.

## B. The Modified Categorical Approach

In the Ninth Circuit, we have held that where a state statute is categorically broader than the generic definition of a crime, we employ a modified categorical approach. *Kepilino v. Gonzales*, 454 F.3d 1057, 1062 (9th Cir. 2006). In *Carty*, we explained that a modified categorical approach is proper when a statute is divisible into several crimes, some of which may involve moral turpitude and some of which may not. *Carty,* 395 F.3d at 1084.

The modified categorical approach, however, only applies when the particular elements in the crime of conviction are broader than the generic crime. When the crime of conviction is missing an element of the generic crime altogether, we can

---

⁹As noted earlier, at some level all illegal acts violate societal norms and values — that is why the acts are illegal. However, "crimes involving moral turpitude" is a limited category of crimes and does not extend to cover all conduct that violates the law.

never find that "a jury was actually required to find all the elements of" the generic crime. *See Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004) (Kozinski, J., concurring) (providing examples).

**[9]** Accessory after the fact under California Penal Code section 32 lacks an element of the generic crime — i.e., the moral turpitude, the requisite depravity. The crime of conviction can never be narrowed to conform to the generic crime because the jury is not required — as *Taylor* mandates — to find all the elements of the generic crime.[10] Even if Navarro-Lopez had admitted to depraved acts, those admissions could not be used to modify the crime because they were not necessary for a conviction. *See Shepard v. United States*, 544 U.S. 13, 24 (2005) (holding that government must show that "a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary"). The modified categorical approach thus cannot be used to conform Navarro-Lopez's accessory after the fact conviction to the generic definition of crimes involving moral turpitude.

## CONCLUSION

**[10]** A crime involving moral turpitude must be a crime that (1) is vile, base or depraved and (2) violates societal moral standards. Accessory after the fact under California Penal Code section 32 does not fall under this definition. The categorical and modified categorical approaches outlined in *Taylor* support this conclusion. Therefore, we grant the petition and remand to the BIA for full consideration of Navarro-Lopez's application for cancellation of removal.

**PETITION GRANTED and REMANDED.**

---

[10]This same analysis applies in cases, as the one currently before us, where courts review plea agreements instead of jury verdicts.

REINHARDT, Circuit Judge, Concurring, joined by Chief Judge SCHROEDER and Judges KOZINSKI, HAWKINS, THOMAS, WARDLAW, W. FLETCHER, and PAEZ:

I join Judge Pregerson's opinion except for Section A(2). Although I agree that accessory after the fact is not a crime of moral turpitude, I cannot agree that offenses involving fraud are subject to the same test as other crimes when we determine which offenses fall within that classification. Generally, crimes are deemed to be offenses of moral turpitude if they are base, vile, or depraved — if they offend society's most fundamental values, or shock society's conscience. Fraudulent offenses, however, are so classified simply by virtue of their fraudulent nature. Such has been the clearly established rule with respect to fraud since at least 1951. *Jordan v. De George*, 341 U.S. 223, 227-32 (1951). Nevertheless, Judge Pregerson is correct that "accessory after the fact" is not a crime of moral turpitude.

## I.

Judge Pregerson's opinion states that "crimes involving fraud are not a per se category of crimes involving moral turpitude," but rather fraud is "an example of conduct that may fall under the umbrella of inherently base and vile conduct that shocks the conscience." According to the Judge Pregerson, courts should evaluate crimes involving fraud the same way that they evaluate other crimes, by determining whether they are base, vile, or depraved. Doing so would, however, directly contradict what the Supreme Court stated unequivocally in *Jordan* to be the universal rule: "Without exception . . . a crime in which fraud is an ingredient involves moral turpitude." 341 U.S. at 227. It would also directly contradict what we reiterated only two years ago in *Carty v. Ashcroft*: "Crimes of moral turpitude are of basically two types, those involving fraud and those involving grave acts of baseness or depravity." 395 F.3d 1081, 1083 (9th Cir. 2005). There was, in fact, nothing new in *Carty*, as far as this circuit is con-

cerned. Almost thirty years earlier, we said in *Winestock v. INS*: "A crime having as an element the intent to defraud is clearly a crime involving moral turpitude." 576 F.2d 234, 235 (9th Cir. 1978); *see also McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980).

There are other offenses that are so base, vile, and depraved that they qualify as crimes of moral turpitude "even though they have no element of fraud." *Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995). These offenses involve "rather grave acts of baseness or depravity" such as murder, rape, and incest. *Id.* Not all serious crimes meet this standard, however. Indeed, we have determined, for example, that burglary, *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005), and assault with a deadly weapon, *Carr v. INS*, 86 F.3d 949, 951 (9th Cir. 1996), do not involve moral turpitude. To be considered a crime of moral turpitude, a crime other than fraud must be more than serious; it must offend the most fundamental moral values of society, or as some would say, "shock[ ] the public conscience." *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (quoting *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988)).

## II.

For the reasons explained earlier, we are not free to follow Judge Pregerson's suggestion that we treat crimes involving fraud like all other crimes, under the base, vile, and depraved standard. Moreover, to do so in the face of controlling law would render our doctrine totally incoherent. We would be compelled to label all crimes involving fraud as base, vile and depraved, and thus to deem all instances of fraud more offensive to society than the numerous serious and even violent felonies that are punishable by lengthy sentences but that we deem not turpitudinous.

Not only would Judge Pregerson's approach render our existing doctrine incoherent, it would also dilute the meaning

of moral turpitude. Terms like "base," "vile," and "depraved" are subjective and nebulous, so we rely on comparisons with other morally turpitudinous crimes when considering whether a crime fits that description. Under our current test for moral turpitude, we compare a crime's depravity with that of crimes we have previously determined to be base, vile, and depraved — crimes such as murder, rape, and incest. *See, e.g.*, *Rodriguez-Herrera*, 52 F.3d at 240. Judge Pregerson's approach would, in addition, require us to compare the depravity of a crime with that of minor fraud offenses, such as providing false information on a passport application. *See Bisaillon v. Hogan*, 257 F.2d 435, 437-38 (9th Cir. 1958). Sweeping all fraud cases within the category of the most immoral offenses would lower the bar for what we deem to be base, vile, and depraved, with the likely result that all felonies would soon be included and the definition of morally offensive crimes would be expanded beyond recognition.

The term "crimes involving moral turpitude" is already at risk of losing its meaning. As Judge Pregerson points out in his opinion, an overly-broad definition of crimes of moral turpitude would leave nothing to distinguish those offenses from all other crimes or felonies — an "untenable" result. We must exercise care in defining the limits of special categories of offenses or the categories will disappear. The Immigration Code does not purport to require the deportation of all aliens convicted of a serious crime. Instead, Congress used the term "crime of moral turpitude" to apply to two categories of crimes: 1) fraudulent offenses; and 2) crimes of an especially morally offensive character. Maintaining the distinction between fraud offenses and offenses that are base, vile, and depraved helps preserve the integrity of the classification of "crimes involving moral turpitude." If we do not adhere to our precedents limiting the scope of the term, the category will sooner or later come to mean simply "crimes." This not only would dilute our language, it would also contravene Congress's intent.

III.

The term "moral turpitude" is not an isolated example of words that lose their meaning through expansive interpretation. The term "aggravated felony," defined in 8 U.S.C. §1101(a)(43), now includes crimes that are actually misdemeanors. *United States v. Gonzalez-Tamariz*, 310 F.3d 1168, 1170-71 (9th Cir. 2002) ("An offense classified as a misdemeanor under state law may . . . be considered an aggravated felony . . . ."). One would think that the category of "aggravated felony" would include only the most serious of felonies, but it actually includes crimes that are not even felonies at all. Likewise, the word "violence" has been expanded beyond recognition. Various courts have held that pickpocketing, *United States v. Mobley*, 40 F.3d 688, 696 (4th Cir. 1994); tampering by unlawful operation of a vehicle, *United States v. Johnson*, 417 F.3d 990, 995-99 (8th Cir. 2005); and escape, *United States v. Mathias*, 482 F.3d 743, 747 (4th Cir. 2007), are "violent" crimes.

Expanding these categories beyond recognition at the expense of depriving common words like "felony" and "violence" of their ordinary meaning does a disservice to the law. In order for judges to apply laws and for citizens to obey them, words must have meanings that are consistent and predictable. Precision in language is necessary not only for effective communication, but also for a well-functioning legal system. As guardians of the rule of law, we should be careful not to contribute to the deterioration of the English language, with the loss of respect for the law that inevitably results.

IV.

Judge Pregerson's opinion persuasively dispenses with the claim that accessory after the fact is base, vile, and depraved.[1]

---

[1]Judge Tallman's reliance on the California Supreme Court's holding in *In re Young*, 776 P.2d 1021 (Cal. 1989), that Penal Code § 32 is a crime

I will address at greater length, however, the dissenters' argument that fraud is inherent in the crime of accessory after the fact.

When we analyze a statute to determine whether the conduct it criminalizes is fraudulent, and thus whether the offense qualifies as a crime of moral turpitude, we consider whether the statute meets either of two conditions: that intentional fraud is an element of the offense; or that the nature of the crime is inherently fraudulent. *See Goldeshtein v. INS*, 8 F.3d 645, 647-50 (9th Cir. 1993); *McNaughton,* 612 F.2d at 459. As Judge Pregerson's opinion states, it is clear that California's accessory after the fact statute does not, on its face, require fraud for conviction. Thus, it is necessary to determine whether fraud is "implicit in the nature of the crime." *Winestock*, 576 F.2d at 235.

Our cases hold that in order to be inherently fraudulent, a crime must involve knowingly false representations made in order to gain something of value. *See Goldeshtein*, 8 F.3d at 649.[2] Accessory after the fact does not necessarily involve

of moral turpitude for the purposes of California Business and Professions Code § 6106 is misplaced. The term "moral turpitude" encompasses far more conduct in California state bar disciplinary proceedings than it does in the federal immigration context. The California Supreme Court has explained that "[a]ny crime or misconduct reflecting dishonesty, particularly when committed in the course of his practice, is clearly relevant to the fitness of an attorney to continue to practice law, and thus is conduct involving moral turpitude for purposes of State Bar disciplinary proceedings." *Baker v. State Bar*, 781 P.2d 1344, 1350 n.3 (Cal. 1989). Indeed, a lawyer's conduct need not even amount to a crime to be considered morally turpitudinous under § 6106. *See Martin v. State Bar*, 575 P.2d 757, 758 (Cal. 1978) ("Habitual neglect of client interests, constituting wilful or grossly negligent conduct, involves moral turpitude under Business and Professions Code section 6106.").

[2]Judge Tallman claims in his dissent that *Goldeshtein* does not hold that establishing fraud requires that a defendant have made false representations in order to obtain something. Instead, he contends that *Goldeshtein* merely found such factors to be "instructive." *Id.* This reading is errone-

false representations, nor does it necessarily result in personal gain. While a conviction under California Penal Code § 32 could result from making false representations to authorities, *see, e.g.*, *People v. Plengsangtip*, 148 Cal. App. 4th 825, 836 (Ct. App. 2007) ("It is clear that certain lies or 'affirmative falsehoods' to authorities, when made with the requisite knowledge and intent, will constitute the aid or concealment contemplated by section 32."), such conduct is not a prerequisite. Many accessory after the fact convictions result from concealment or assistance in evading the authorities and do not involve false representations or affirmative deceit. *See People v. Riley*, 20 Cal. App. 4th 1808, 1816-17 (Ct. App. 1993) (stating that attempting to dispose of the murder weapon constitutes accessory after the fact); *People v. Gunn*, 197 Cal. App. 3d 408, 415-16 (Ct. App. 1987) (holding that driving the principal from the crime scene and assisting in concealing the weapon could amount to accessory after the fact); *People v. Scott*, 170 Cal. App. 3d 267, 269-70 (Ct. App. 1985) (holding that the driver of a getaway car can be convicted of accessory after the fact). Depriving the government of evidence or information does not, however, rise to the level of fraud. *Goldeshtein*, 8 F.3d at 649.

Even when an accessory after the fact conviction does involve false representations to the authorities, the defendant will often not gain something of value. The type of benefit at issue in fraud cases is not the evasion of criminal penalties, but rather something more tangible, such as money,

---

ous. In *Goldeshtein*, we distinguished the statute in question from other statutes solely on the basis that the latter all involved falsification in order to obtain some tangible benefit. 8 F.3d at 649 ("Unlike the alien in *Flores*, however, Goldeshtein did not obtain anything from the government by deceit, graft, trickery, or dishonest means. . . . The other cases upon which the INS and the BIA rely are subject to the same distinction . . . ."). It is plain from our opinion that in order to establish that fraud is inherent in an offense, the criminalized conduct must necessarily involve false representations or deceit for the purpose of gaining something of value.

*McNaughton*, 612 F.2d at 459, a passport, *Bisaillon*, 257 F.2d at 437, naturalization papers, *United States ex rel. Popoff v. Reimer*, 79 F.2d 513, 515 (2d Cir. 1935), or an occupational deferment from military service, *Matter of R-*, 5 I. & N. Dec. 29, 38 (BIA 1952). Helping another evade criminal penalties involves preventing a loss of liberty, not securing a gain of something of tangible value.

Judge Tallman's dissent cites *Itani v. Ashcroft*, 298 F.3d 1213 (11th Cir. 2002), and *Padilla v. Gonzales*, 397 F.3d 1016 (7th Cir. 2005), as support for its argument that accessory after the fact is an inherently fraudulent offense. Neither case is persuasive. In *Itani*, the court found that misprision of felony was a crime of moral turpitude because "it necessarily involves an affirmative act of concealment or participation in a felony, behavior that runs contrary to accepted societal duties and involves dishonest or fraudulent activity." 298 F.3d at 1216. All crimes "run contrary to accepted societal duties." Thus, the court's statement that misprision does so serves at most to justify the classification of that act as a crime, not as a crime of moral turpitude. The court offers no explanation at all for its pronouncement that misprision involves dishonest or fraudulent activity. It simply offers that bare conclusion. Further, the court wrongly equates dishonest behavior with fraud. *Padilla* uses the same faulty reasoning in concluding that obstruction of justice is a crime of moral turpitude because it "specifically entails dishonesty." 397 F.3d at 1020. Most crimes involve dishonesty of some kind, but our precedents require more for an offense to be considered fraudulent. *See, e.g.*, *Carty*, 395 F.3d at 1084; *Goldeshtein*, 8 F.3d at 649. "Fraud" is a term with a specific meaning in the law — it is not synonymous with "dishonesty." A construction of moral turpitude that includes all acts of dishonesty, when coupled with the expansive construction the dissent would undoubtedly give to the other prong of moral turpitude, would undoubtedly result in the inclusion of almost all criminal offenses in a category that was intended to single out certain types of crimes as particularly offensive to society's values.

If, as the logic of the dissent suggests, the term "moral turpitude" applies to the offense of assisting any person who has committed a crime — whether that underlying crime is a crime of moral turpitude or not, whether, indeed, the underlying crime is only a misdemeanor — simply because that offense is "dishonest," then the difference between criminal conduct and crimes of moral turpitude has truly been eliminated and all crimes have finally become equally turpitudinous.

## Conclusion

Judge Pregerson's opinion combines the two prongs of our moral turpitude doctrine by applying the same standard both to offenses involving fraud and to offenses involving depravity, contrary to controlling Supreme Court and Ninth Circuit law. Moreover, that method of analysis would have the effect of rendering the term "crimes of moral turpitude" even more difficult to apply than it already is. We would be required to compare crimes that are entirely different in kind, and the inevitable result would be even greater incoherence in our decisions. Furthermore, such an approach lacks clear limits and could lead to the expansion of the definition of crimes of moral turpitude to the point of including nearly every criminal offense. Our current analytical method, under which fraud is deemed turpitudinous under a different standard than is applicable to other crimes, has a limiting effect on the scope of offenses that may be deemed base, vile, or depraved. Given that we are not free to eliminate fraud from the set of crimes considered to be turpitudinous, we must retain the distinction between the two classes of offenses in order to keep the concept of moral turpitude within its historic bounds.

Under our two-pronged approach, accessory after the fact under California Penal Code § 32 is neither a crime of fraud nor a crime of depravity. Accordingly, I agree that it is not a crime involving moral turpitude.

TALLMAN, Circuit Judge, with whom Circuit Judges O'SCANNLAIN, RAWLINSON, CLIFTON, and BYBEE join, dissenting:

We took this case en banc to clarify our jurisprudence regarding crimes of moral turpitude. The fractured decision we announce today only compounds the uncertainty attending this arcane subject of criminal opprobrium. Navarro-Lopez's petition for review of his final order of removal should be denied because the crime of being an accessory after the fact in violation of California Penal Code section 32 is a crime involving moral turpitude under the categorical approach established in *Taylor v. United States*, 495 U.S. 575 (1990). In reaching the opposite conclusion, the majority employs dubious reasoning and ignores relevant case law from our sister circuits, creating yet another unnecessary circuit split. I respectfully dissent.

I

The opinion authored by Judge Pregerson offers various definitions for "moral turpitude," some quite vivid,[1] before concluding that a conviction under California Penal Code section 32 does not, categorically, fit within the appropriate definition.[2] *See* Maj. op. at 12570-71. For reasons outlined in Part

---

[1]The majority is even content to cite to a dissent in order to support its characterization of moral turpitude. *See* Maj. op. at 12577 (quoting *Jordan v. De George*, 341 U.S. 223, 237 n.9 (1951) (Jackson, J., dissenting)). Indeed, in its zeal to set a high bar for a finding of moral turpitude, the majority refers to morally turpitudinous conduct as that which is "so far contrary to the moral law" that it gives rise to "moral outrage." Maj. op. at 12577. Not surprisingly, the phrase "moral outrage" (in so far as it pertains to moral turpitude) appears only once in all of federal law—in the dissent to the now-vacated panel decision in this case. *See Navarro-Lopez v. Gonzales*, 455 F.3d 1055, 1060 (9th Cir. 2006) (Pregerson, J., dissenting).

[2]Judge Pregerson's citation to definitions from multiple circuits and dictionaries illustrates a problem our court recognized over fifty years ago—

I of Judge Reinhardt's concurrence, *see* pp. 12582-83, and which I will not belabor here, there is a fundamental problem with the majority's approach to defining moral turpitude—it fails to recognize an important distinction in both Ninth Circuit and Supreme Court jurisprudence. Our case law plainly establishes two broad and wholly distinct categories of crimes involving moral turpitude: those "involving fraud and those involving grave acts of baseness or depravity." *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005) (citing *Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995)); *see also Jordan v. De George*, 341 U.S. 223, 229 (1951) ("[F]raud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude."). Thus, I cannot agree with the attempt to shoehorn fraud crimes within a larger umbrella category of crimes that are base or depraved. Recognizing the two categories as analytically distinct, I would hold that a conviction under section 32 of the California Penal Code qualifies as a crime involving moral turpitude under the prong addressing fraudulent conduct.

---

namely, that strict definitions of "moral turpitude" are not very helpful. In *Tseung Chu v. Cornell*, 247 F.2d 929, 933 (9th Cir. 1957), we observed that we were not unmindful of the "myriad decisions sponsoring various concepts of moral turpitude," but that none of them offered any "well settled criteria" which would help us in making this determination. By cobbling together its own definition of the term, the court's opinion today amounts to saying little more than it knows moral turpitude when it sees it, and California Penal Code section 32 isn't it. The opinion does nothing to clarify the criteria one should employ in determining which fraud crimes are "base, vile, or depraved," *see, e.g.,* Maj. op. at 12574, and which are not. It concludes, contrary to the opinion of the Supreme Court of California, that Penal Code section 32 can never be a crime of moral turpitude. *Compare In re Young*, 776 P.2d 1021, 1024 (Cal. 1989), *with* Maj. op. at 12581.

II

Determining whether section 32 qualifies as a crime of moral turpitude warrants an examination of judicial decisions addressing similar statutes. *See Jordan*, 341 U.S. at 227 (stating that courts must "look to the manner in which the term 'moral turpitude' has been applied by judicial decision"). Indeed, the few circuits that have addressed this issue have *all* determined that moral turpitude attaches to convictions under statutes criminalizing concealment of crime.[3]

In *Itani v. Ashcroft*, the Eleventh Circuit determined that a conviction under the federal misprision of felony statute, 18 U.S.C. § 4, qualified as a crime of moral turpitude. 298 F.3d 1213, 1216 (11th Cir. 2002). Like a conviction under section 32 of the California Penal Code, a federal conviction for misprision of felony requires a showing that the accused has knowledge of a felony and "conceals and does not as soon as possible make known the same to [civil authorities]." 18 U.S.C. § 4. Highlighting the fact that the misprision statute requires an affirmative act of concealment, the *Itani* court concluded that a conviction under the statute is a crime of moral turpitude because it involves "behavior that runs contrary to accepted societal duties and involves dishonesty or fraudulent activity." 298 F.3d at 1216.

Similarly, in *Padilla v. Gonzales*, the Seventh Circuit determined that a conviction under Illinois's obstruction of justice statute was a crime involving moral turpitude. 397 F.3d 1016, 1021 (7th Cir. 2005). Under Illinois law, a defendant is guilty of obstruction if he "knowingly furnish[es] false information

---

[3]Though the question of whether a crime involves moral turpitude for federal immigration purposes requires an analysis of federal law, it is persuasive that the California Supreme Court has held that a conviction under Penal Code section 32 necessarily involves moral turpitude. *See Young*, 776 P.2d at 1024 (upholding an attorney's section 32 conviction and declaring that "[t]his crime necessarily involves moral turpitude since it requires that a party has a specific intent to impede justice with knowledge that his actions permit a fugitive of the law to remain at large").

'with intent to prevent the apprehension or obstruct the prosecution or defense of any person.' " *Id.* at 1019 (quoting 720 Ill. Comp. Stat. 5/31-4(a)). Focusing on the statute's specific intent requirement, our sister circuit noted that a conviction under the statute could be characterized as *malum in se*—a designation generally associated with crimes involving moral turpitude. *Id.* at 1020 ("Specific intent is inconsistent with a crime that is *malum prohibitum*.").

The Seventh Circuit then addressed two elements of the Illinois statute: knowingly making false statements and intentionally concealing criminal activity. As to the former, the court noted that "[s]ome courts have read 'fraudulent intent,' and thus moral turpitude, into conduct 'the likely effect of which would be to mislead or conceal.' " *Id.* (quoting *Smalley v. Ashcroft*, 354 F.3d 332, 337-38 (5th Cir. 2003)); *see also Itani*, 298 F.3d at 1215 ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude." (internal quotation marks omitted)). As a result, the appellate court concluded that "Padilla was convicted of . . . a crime that specifically entails dishonesty and thus implicates moral turpitude." *Padilla*, 397 F.3d at 1020. As to the second element, intent to conceal a crime, the court cited *Itani* with approval and held that concealment "likewise involves moral turpitude." *Id.* at 1021; *see also Cabral v. INS*, 15 F.3d 193, 197 (1st Cir. 1994) (holding that an alien convicted of accessory after the fact to murder committed a crime involving moral turpitude because he intentionally assisted the principal in evading authorities).

Section 32 of the California Penal Code punishes essentially the same behavior addressed by the federal misprision of felony statute and Illinois's obstruction of justice law. Each statute contains a specific intent element, and each addresses the concealment or protection of a criminal or his crime. It makes little sense to treat the same conduct with different punishments: in the Eleventh Circuit, an alien is removable for actively concealing a known felon, but under the majori-

ty's reading, in the Ninth Circuit a friend who harbors the same criminal in California is not. Moreover, I find persuasive the reasoning cited with approval in *Padilla*, equating fraudulent intent with conduct intended to mislead or conceal, because, by its very nature, an act in furtherance of evasion from prosecution entails some form of deceit. *Cf. Smalley*, 354 F.3d at 338. Therefore, I would follow the California Supreme Court's decision in *Young* and our sister circuits and hold that a conviction under California's accessory after the fact statute necessarily involves moral turpitude, rendering Navarro-Lopez removable from this country.

## III

The reasoning employed in *Young*, *Itani*, and *Padilla* is consistent with our prior definition of moral turpitude as a crime involving fraud. Under the test set forth in *Goldeshtein v. INS*, 8 F.3d 645 (9th Cir. 1993), and in conformance with these extracircuit precedents, I would hold that a conviction as an accessory after the fact qualifies categorically as a crime involving moral turpitude.

In *Goldeshtein*, we determined that a conviction under federal law for structuring financial institutions to avoid currency reports did not constitute a crime involving moral turpitude. *Id.* at 647-48. In reaching this conclusion, we acknowledged that fraud crimes involved moral turpitude if intent to defraud is (1) an essential element of the crime or (2) "if such intent is 'implicit in the nature of the crime.' " *Id.* at 648 (quoting *Winestock v. INS*, 576 F.2d 234, 235 (9th Cir. 1978)); *see also McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980) (noting that courts may look to "the statutory definition or . . . the nature of the crime"); *Matter of Flores*, 17 I. & N. Dec. 225, 228 (BIA 1980) ("[W]here fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude."). Because "[t]he offense of structuring financial transactions to avoid currency reports . . . does not involve the

use of false statements or counterfeit documents, [ ]or [the obtaining of] anything from the government," we concluded that "fraud is not inherent in the nature of this offense." *Goldeshtein*, 8 F.3d at 649.

Notably, in *Goldeshtein* we did not hold that providing false statements or obtaining something from the government for one's own benefit was *required* to establish that fraud is inherent in a particular crime; our holding may be read fairly as identifying such conduct as sufficient but not necessary in light of the facts of that particular case. Nevertheless, holding that moral turpitude attaches to a conviction under California's accessory after the fact statute is consistent with this reasoning.

*Goldeshtein* suggested that pecuniary gain is not necessary. *See id.* at 649 & n.9. Nor need the gain be tangible. *See id.* at 649 (citing *Matter of R-*, 5 I. & N. Dec. 29, 38 (BIA 1952) (finding that fraud is inherent where an alien made a false statement to obtain an occupational deferment to which he was not entitled)). Furthermore, we stopped short of holding that the benefit must accrue to the individual, as opposed to a third party. *See id.* (citing *United States ex rel. Popoff v. Reimer*, 79 F.2d 513, 515 (2d Cir. 1935) (holding that fraud is inherent where an individual makes false statements on behalf of an alien to aid the alien in obtaining naturalization)).

Thus, while an accessory after the fact under California law may not personally gain something of value, he certainly procures a benefit for the principal in the form of prolonged freedom from detection or apprehension. This assistance after the commission of a felony may allow evidence to disappear or become stale, give the principal the opportunity to flee the country, or worse, enable him to commit another crime. Regardless of the exact benefit to the principal, however, the help of an accessory impedes the swift administration of justice, a result which is morally reprehensible.

Section 32 punishes a host of acts intended to assist the principal in evading capture. At base, however, the statute punishes *deception*, regardless of whether it comes in the form of false statements or some other act of concealment or aid. The intent to assist a felon in evading detection and prosecution remains the same. Indeed, California cases have made clear that a conviction under section 32 is proper only if the accessory engaged in "overt or affirmative assistance." *People v. Duty*, 74 Cal. Rptr. 606, 609 (Ct. App. 1969); *see also People v. Elliott*, 18 Cal. Rptr. 2d 426, 430 (Ct. App. 1993) (reiterating that a conviction under section 32 must be for something "more than mere encouragement or incitement"). Therefore, simply failing to disclose the location of a felon does not violate the statute; section 32 requires some form of actual assistance *intended* to aid the principal in avoiding detection by authorities. In many cases, this assistance invariably will manifest itself as false statements. However, as long as the net effect is one of deception to help cover up the crime or delay apprehension of its perpetrator,[4] I see no reason to limit narrowly the overt act to statements in order to conclude that fraud is inherent in a conviction under California's accessory statute.

Thus, in light of the holdings of our sister circuits and the fraud analysis we articulated in *Goldeshtein*, I would follow the California Supreme Court's authoritative interpretation of its own laws and hold that a conviction under section 32 of the California Penal Code qualifies as a crime involving moral turpitude.

---

[4]Judge Reinhardt cites a handful of California cases to support the argument that a conviction under section 32 does not necessarily involve "false representations or affirmative deceit." Reinhardt conc. at 12587. However, I cannot see how disposing of a weapon, *see People v. Riley*, 20 Cal. App. 4th 1808, 1816-17 (Ct. App. 1993), or driving a getaway car, *see People v. Scott*, 170 Cal. App. 3d 267, 271 (Ct. App. 1985), "with the intent that the principal may escape from arrest and trial," *People v. Prado*, 136 Cal. Rptr. 521, 523 (Ct. App. 1977), is anything other than an overt act, the effect of which is to mislead or otherwise confound the efforts of law enforcement.

IV

The majority opinion does little to undermine the analysis of extracircuit precedent or *Goldeshtein*. Instead, the majority proceeds on several faulty and somewhat misleading premises. As an initial matter, the majority is misguided in its attempt to look to "the broad range of acts" punishable under the accessory after the fact statute as support for its conclusion that "providing food or shelter to one who has committed a felony" does not fall within the definition of moral turpitude. Maj. op. at 12577. I fail to see the benevolence of providing shelter to a known felon, at least in the manner prohibited by California's accessory law. Let us be clear here: the statute does not punish those who merely provide food and shelter to a felon; it punishes those who do so *with the specific intent that the felon escape arrest or trial. See Prado*, 136 Cal. Rptr. at 523. The majority's citation to our decision in *United States v. Hill*, 279 F.3d 731, 736 (9th Cir. 2002); *see* Maj. op. at 12577, is unavailing because in *Hill* we emphasized that culpability attached under Oregon's accessory statute only upon a showing that the provision of food or shelter was for the purpose of helping a known felon escape detection. *Id.* at 738 ("Hill provided [her husband] with food and shelter in northern Mexico *so that he would not have to go back to the United States to retrieve their belongings himself and she did so after she knew there was a felony warrant for his arrest*." (emphasis added)).

Moreover, the majority's analogy to the provision of food and shelter (or any other example intended to evoke sympathy, such as the classic example of a priest offering sanctuary) is misplaced for another reason: this is exactly the type of creative hypothesizing in *Taylor* categorical cases that the Supreme Court recently condemned. In *Gonzales v. Duenas-Alvarez*, the Supreme Court reversed us and held that a conviction under section 10851(a) of the California Vehicle Code for aiding and abetting a vehicle theft falls within the scope of the generic theft definition under federal law. 127 S. Ct.

815, 818 (2007). Rejecting Duenas-Alvarez's argument that the wording of the California law might lead to punishment for acts outside the relevant federal definition, the Court made clear that

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of a legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.[5]

*Id.* at 822; *see also James v. United States*, 127 S. Ct. 1586, 1597 (2007) (reiterating the *Duenas-Alvarez* reasoning).

The majority's treatment of *Duenas-Alvarez* is unpersuasive, and it fails to identify any cases in which an individual has been prosecuted under section 32 for the particularly benign acts of providing food or shelter to a loved one "during a time of trouble." *See* Maj. op. at 12577-78. Indeed, finding such a helpful example might prove quite difficult as a brief survey of cases involving the accessory statute demonstrates that the state has not chosen to prosecute those whose

---

[5]I agree with the majority that the charging documents in this case do not provide sufficient detail from which to glean the factual basis for Navarro-Lopez's conviction under the California accessory after the fact statute. *See* Maj. op. at 12581. However, because I believe a conviction under section 32 is categorically a crime of moral turpitude, the lack of specific information is irrelevant since we need not employ the modified categorical approach. *See Taylor*, 495 U.S. at 600; *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002).

actions are easily defensible on moral grounds. *See, e.g.*, *People v. Nguyen*, 26 Cal. Rptr. 2d 323, 328 (Ct. App. 1993) (accessory to genital penetration); *People v. Wilson*, 21 Cal. Rptr. 2d 420, 421-23 (Ct. App. 1993) (accessory to attempted voluntary manslaughter and assault with a firearm); *Prado*, 136 Cal. Rptr. at 522-23 (accessory to armed robbery); *Duty*, 74 Cal. Rptr. at 607 (accessory to arson); *People v. Allsip*, 74 Cal. Rptr. 550, 550 (Ct. App. 1969) (accessory to rape); *People v. Kloss*, 19 P.2d 822, 822-23 (Cal. Ct. App. 1933), *overruled in part on other grounds*, *People v. McCoy*, 24 P.3d 1210 (Cal. 2001) (accessory to murder).

In addition, the fact that one state within our circuit expressly exempts family members from accessory liability, *see* Nev. Rev. Stat. § 195.030, has no bearing on whether a conviction under California's statute is a crime involving moral turpitude. One state's legislative prerogative to exempt family members is no more important than the other eight states' individual decisions not to exempt them. Moreover, I cannot say that exempting family members from accessory liability makes much sense as a practical matter because fleeing felons are often most likely to seek assistance from family before anyone else. Indeed, in at least one case, California's decision to make family members liable illustrates the wisdom of the statutory inclusion. *See, e.g.*, *Wilson*, 21 Cal. Rptr. 2d at 422-23 (noting that a wife could be charged as an accessory where, knowing her husband had committed a felony, she complied with his request to locate and hide a firearm that he had used during a car chase in which he wounded one of the two men he was pursuing).

Finally, by focusing on the categorization of the underlying felony, the majority completely ignores the analytically distinct and morally reprehensible nature of a conviction under section 32 of the California Penal Code. The principal's conduct should be irrelevant to the analysis because *any* attempt to assist in the evasion of the due administration of justice

merits society's reprobation.[6] The Supreme Court has reminded us that "[c]oncealment of crime has been condemned throughout our history." *See Roberts v. United States*, 445 U.S. 552, 557 (1980); *see also Branzburg v. Hayes*, 408 U.S. 665, 696 (1972) (emphasizing that each citizen bears the responsibility to "raise the 'hue and cry' and report felonies to the authorities"); *id.* at 697 ("[Concealment of a crime] deserves no encomium."). The universal disdain for the concealment of a crime "was an established tenet of Anglo-Saxon law at least as early as the 13th century," making it no surprise that our first Congress enacted a statute criminalizing such behavior. *Roberts*, 445 U.S. at 557-58. As the *Roberts* Court acknowledged, "gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship." *Id.* at 558. This principle is as true today as it was in the 1200s.[7]

V

A conviction under section 32 of the California Penal Code qualifies categorically as a crime involving moral turpitude under the fraud analysis of *Goldeshtein.* Holding otherwise creates an unnecessary tension between us and our sister cir-

---

[6]The majority cites to a nonbinding Department of State Foreign Affairs Manual to support its argument that an accessory after the fact conviction cannot involve moral turpitude where the underlying offense was not morally turpitudinous. Maj. op. at 12577. However, the majority overlooks another provision of the same manual, which states that "[c]rimes committed against governmental authority which fall within the definition of moral turpitude include . . . [h]arboring a fugitive from justice (with guilty knowledge)." 9 U.S. Dep't of State Foreign Affairs Manual 40.21(a) n.2.3-2(a)(6).

[7]The majority's citation to California convictions under section 32 involving firearms, assault, and burglary offenses is therefore unpersuasive. *See* Maj. op. at 12579-80. These crimes are still quite serious, and they certainly do not reflect the majority's concern that in California there is a "realistic probability," *see Duenas-Alvarez*, 127 S. Ct. at 822, that an individual will be convicted under section 32 for particularly benign or charitable acts.

cuits that have recognized the morally turpitudinous nature of convictions involving the concealment of crime. Because the court reaches the opposite conclusion based on dubious reasoning—adding only more confusion to our jurisprudence on crimes of moral turpitude—I respectfully dissent.

BEA, Circuit Judge, dissenting, with whom Judge O'SCANNLAIN joins:

Navarro-Lopez was convicted of a crime, being an accessory after the fact in violation of California Penal Code section 32. To determine whether this section 32 conviction is a crime involving moral turpitude so as to render Navarro-Lopez inadmissible to this country, a federal court must "look to the manner in which the term 'moral turpitude' has been applied by judicial decision." *Jordan v. De George*, 341 U.S. 223, 227 (1951).[1]

The question whether a state crime qualifies as a "crime involving moral turpitude" within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(I) cannot be answered, as the majority attempts to do, by turning to the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990). The categorical approach of *Taylor* asks whether the definition of the state crime proscribes any set of acts with a realistic probability of prosecution by the state that fall outside the "generic," or federal, definition of the crime. *See Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007); *Taylor*, 495 U.S. at 598. To answer that question requires first a determination of what are the elements of the federal crime. For example, in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc), a federal statute supplied the answer: "crime of violence" in an immigration removal statute was defined elsewhere in the

---

[1]I concur in the research and result reached in Part II of Judge Tallman's dissenting opinion.

U.S. Code to require "as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* at 1126 (quoting 18 U.S.C. § 16(a)).

But here there is no federal *crime* to define. Much less is there one to *compare* to a state crime. We are not asked, for instance, to define the elements of misprision of a felony, 18 U.S.C. § 4, and compare it to harboring a felon, Cal. Penal Code § 32. Rather, we are asked to determine whether a state crime falls within the federal *term* "crime involving moral turpitude." That *term* is not itself a *crime*. There is no generic federal crime of moral turpitude with elements similar to, or different from, a state crime of moral turpitude for the simple reason there is no state crime of moral turpitude. One has to have a *crime*, such as burglary, to use the *Taylor* categorical analysis. Furthermore, the *term* crime of moral turpitude is not defined in a federal statute nor in Supreme Court case law, with respect of harboring a felon.

Instead of a binding federal definition of "crime involving moral turpitude," what we have is a binding Supreme Court case telling us *what to look to* in order to determine whether a state crime fits the *federal* appellation "crime involving moral turpitude." *Jordan*, 341 U.S. 223. De George was an alien twice found guilty of conspiring to defraud the United States of tax on alcoholic beverages and was ordered deported for twice having committed a "crime involving moral turpitude," each carrying a sentence of imprisonment of over one year. *Id.* at 224-25. He filed a federal habeas petition, claiming the crimes did not involve moral turpitude. *Id.* at 226. The district court denied the petition. *Id.* The Court of Appeals for the Seventh Circuit reversed, finding—much as does the majority here with respect of harboring a criminal—that intent to evade tax did not involve actions characteristic of moral turpitude such as violence, baseness, vileness, or depravity, and was therefore not a crime involving moral turpitude. *Id.* at 226. The Supreme Court reversed. It stated:

> In deciding the case before the Court, *we look to the manner in which the term "moral turpitude" has been applied by judicial decision*. Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude.

*Id.* at 227 (emphasis added). The Court surveyed federal and state decisions, which had unanimously held that crimes of fraud were crimes involving moral turpitude. *Id.* at 227-29. The Court concluded: "It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude.' " *Id.* at 229.[2]

If we follow the method mandated in *Jordan*, it is clear that harboring a felon with intent to frustrate just prosecution will prove to be a crime involving moral turpitude. As discussed in Part II of Judge Tallman's dissent, all federal circuits to consider the question have held that statutes similar to section 32, involving concealing a felon or a felony, are crimes involving moral turpitude. Significantly, the California Supreme Court has held violation of section 32 to be a crime involving moral turpitude. *In re Young*, 776 P.2d 1021, 1024 (Cal. 1989). No case to the contrary has been cited by the parties nor, indeed, by the majority. Given the seemingly unanimous status of federal and state "judicial decision," we must conclude Navarro-Lopez's crime involves moral turpitude under the Supreme Court's mandate. There is no permissible basis—no "judicial decision"—to conclude it does *not* involve moral turpitude. *Jordan*, 341 U.S. at 227-29.

We need not—and should not, under *Jordan*—resort to the secondary, indirect reasoning used by the majority: an attempt

---

[2]It was against the backdrop of *Jordan* that Congress enacted section 1182 the following year. *See* Immigration and Nationality Act, Pub. L. No. 414, § 212, 66 Stat. 163, 182 (1952).

to find conduct, *other* than harboring a felon, which courts have found "vile," "base," or "depraved," and have labeled crimes involving moral turpitude, and then muse whether harboring a felon is similarly "vile," "base," or "depraved." Such a task ineluctably calls on our court to state its subjective evaluation. That is precisely what the majority does here. It tests the various sorts of "harborings of felons" against its own, unarticulated standards of what is "moral" and what is "turpitudinous." Of course, if the question asked were whether the crime involved baseness or depravity, perhaps evolving standards of decency might trump mere prior judicial decisions. But judges and "Justices are not platonic guardians appointed to wield authority according to their personal moral predilections."[3] *Jordan* tells judges to determine whether a crime involves moral turpitude not from the philosopher's seat, but from a less elevated location: by sitting in the law library and reading the cases.

I respectfully dissent.

---

[3]William J. Brennan, Jr., *The Constitution of the United States: Contemporary Ratification*, in *Interpreting the Constitution* 25 (Jack N. Rakove ed., 1990) (reprint of Address to the Text and Teaching Symposium, Georgetown University (Oct. 12, 1985)).